RANDOLPH F. PURDY, Respondent, *v.* AGNES LYNCH, as Executrix, etc., et al., Appellants.

While a trustee is to be held to the most rigid accountability for the performance of all his duties as such, the true question in any case, where he is charged with negligence, is as to whether, considering all the facts and circumstances, he employed in the matter complained of such prudence and diligence in the discharge of his duties as in general, men of average prudence and discretion would employ in their own affairs, and in determining this, the facts as they existed at the time are to be considered, · without regard to those which subsequently took place, by reason of which a loss occurred.

R., who had been one of the managing officers of a savings bank which became insolvent, in order to secure the depositors in the bank, executed to three trustees, D., L. & Q., a conveyance of certain real estate; they to sell the same and with the proceeds pay the depositors, who would execute to R. subrogations of their rights against the bank, so much of their deposits as were not paid by the receiver of the bank. It was understood that Q. was to be and he was appointed receiver. Q. was a well-known business man of high character and financial ability; he was well known to R., and acceptable to him both as trustee and receiver. In an action brought against the trustees for an accounting these facts appeared: A large sum was received from the sale of the real estate and from rents thereof, all of which went into the hands of Q., who paid out the whole thereof in the execution of the trust, save a balance of $32,962.96, which was unaccounted for; of the proceeds of the sales over $17,000 came into Q.'s hands directly, and were never in the possession or under the control of the other trustees. The trustees appointed an agent to collect the rents, who collected over $18,000, which he paid over to Q. *Held,* that for these sums D. & L. were not liable, and as they amounted to more than the deficit, there was nothing for which they could be held liable.

There were a large number of depositors, all of whose claims were due. Most of the proceeds of sales were deposited by the trustees with a trust company, and subsequently from time to time were drawn out by them and transferred to Q. to enable him to at once pay the depositors, and take the subrogations as provided for in the trust deed. *Held,* that under the circumstances, and in the absence of any proof or claim that the transfers were made at times when there was no pretense of their being needed to pay depositors, D. & L. were not chargeable with such negligence in making the transfers as would make them liable for the failure of Q. to account for all the money that thus came into his possession; that they had the right to transfer at one time funds enough to answer all contingencies and more than enough for any one day or one week's payments.

Also, *held,* that the trustees, in the performance of their duties, had a right to appoint an agent to do some of their work, and were not precluded from appointing one of their number as such agent.

*Purdy* v. *Lynch* (72 Hun, 272), reversed.

(Argued March 15, 1895; decided April 9, 1895.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 11, 1893, which modified and affirmed as modified a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles E. Miller* for appellant. The creditors of the Guardian Savings Institution are necessary and proper parties to this action, so far at least as relates to the distribution of the trust property disposed of. (*Sherman* v. *Parish,* 53 N. Y. 490.) Lynch and Develin were not guilty of negligence. (*King* v. *Talbot,* 40 N. Y. 76 ; *McCabe* v. *Fowler,* 84 id. 314; *Clough* v. *Bond,* 3 M. & Cr. 497 ; Story's Eq. Juris. § 1272 ; Williams on Exrs. [6th ed.] 1922.) In their conduct Lynch and Develin acted with such prudence and diligence in the care and management of the trust estate as in general prudent men of discretion and intelligence would have employed in a similar matter and in the same manner in which they would have acted for themselves under similar circumstances and

according to the ordinary usages of business. The appointment
of an agent was proper. (Lewin on Trusts, 254; Williams on
Exrs. 1922–1930; Perry on Trusts, § 409; *Ivy* v. *Campbell*,
1 S. & L. 341; *Speight* v. *Gaunt*, 9 App. Cas. 1; *Chambers*
v. *Minchin*, 7 Ves. 193; *Bacon* v. *Bacon*, 5 id. 331; *Davis*
v. *Sterling*, 1 R. & E. 66.) The circumstances of this case
justified, if they did not absolutely require, the employment
of an agent to perform the merely clerical duty of paying the
creditors of the Guardian Savings Institution and the intrust-
ing to him of moneys to make such payments. (*Ex parte
Griffin*, 1 G. & J. 114.) The prudence and propriety of the
conduct of the trustees must be judged in the light of exist-
ing circumstances and not by the result. (*Crabb* v. *Young*,
92 N. Y. 56; *Lansing* v. *Lansing*, 1 Abb. Pr. [N. S.] 288.)
Plaintiff acquiesced in the conduct of the trustees. (*Stuyve-
sant* v. *Hall*, 2 Barb. Ch. 151; *Stuyvesant* v. *Hone*, 1 Sandf.
Ch. 419; *Truscott* v. *King*, 6 Barb. 346; 2 Seld. 147; *Hall*
v. *Nelson*, 23 Barb. 88.) The acquiescence of plaintiff in the
course of conduct adopted by the trustees waived the neces-
sity of any other course on their part and was *pro tanto* a
modification of the provisions of the trust deed if such con-
duct were not in accordance with such provisions. (Bigelow
on Estoppel, 663; *Johnson* v. *Oppenheim*, 55 N. Y. 280, 291;
*Ins. Co.* v. *Norton*, 96 U. S. 234, 240; *E. C. S.
Bank* v. *Root*, 48 N. Y. 292, 298; *Sherman* v. *Parish*, 53 id.
483, 492; *Butterfield* v. *Cowing*, 112 id. 486; *Brier* v.
*Stokes*, 11 Ves. 319; Perry on Trusts, §§ 467, 850, 852, 870;
Story's Eq. Juris. § 1284; Herman on Estoppel, 954, 1360;
*Niven* v. *Belknap*, 2 Johns. 573.) A waiver may be estab-
lished by parol evidence, or by the conduct of the parties.
(Add. on Cont. § 324; *Prentice* v. *K. L. Ins. Co.*, 77 N. Y.
483; *Brink* v. *H. F. Ins. Co.*, 80 id. 108–112; *Ins. Co.* v.
*Norton*, 96 U. S. 234) The court below erred in charging
Lynch and Develin with the rents of real estate, amounting
to $18,746.25, received by Quinlan alone, and which never
came into their hands. (Lewin on Trusts, 260; Perry on
Trusts, §§ 334, 412, 415; *Bruen* v. *Gillett*, 115 N. Y. 10;

*Cocks* v. *Haviland,* 124 id. 426 ; *Townley* v. *S. B. Co.,* 35 S. C. 312 ; *Littlescales* v. *Gascoyne,* 3 Bro. C. C. 73 ; *Riky* v. *Kennies,* 1 L. & Gt. Sugd. 122 ; *Williams* v. *Nixon,* 2 Beav. 472 ; *Gouldsworth* v. *Knight,* 11 M. & W. 387 ; *Ohio* v. *Guilford,* 18 Ohio, 500.) The courts below erred in refusing to allow commissions to Lynch and Develin on the balance of moneys received and paid out by them over and above the sum of $183,530.18, upon which they had received commissions. (*Meacham* v. *Sterries,* 9 Paige, 398.)

*David Thomson* for respondent. The trustees Lynch and Develin became liable for the misapplication of the trust fund by their co-trustee Quinlan by reason of their careless and negligent performance of the duties of their trust. (Story's Eq. Juris. §§ 1267, 1275, 1278 ; *Oliver* v. *Court,* 8 Price, 127 ; *Schenck* v. *Schenck,* 1 C. E. G. 174 ; *Dix* v. *Burford,* 9 Beav. 409 ; *Egbert* v. *Butler,* 21 id. 560 ; *Booth* v. *Booth,* 1 id. 125 ; *Lincoln* v. *Wright,* 4 id. 427.) The transfer of the trust funds to Quinlan by his co-trustees rendered the trustees Lynch and Develin liable in law for the misapplication thereof. (*Sadler* v. *Hobbs,* 2 Brown's Ch. 114 ; *Cross* v. *Smith,* 7 East, 256 ; *Curtis* v. *Mason,* 12 L. J. [N. S.] 442 ; *Chambers* v. *Minchin,* 7 Ves. 186 ; *Keble* v. *Thompson,* 3 Brown's Ch. 112 ; *Doyle* v. *Blake,* 2 S. & L. 229 ; *Cowell* v. *Gatcombe,* 27 Beav. 568 ; *Mendes* v. *Guedella,* 2 J. & H. 259 ; *Walker* v. *Symonds,* 3 Swanst. 50 ; *Clough* v. *Bond,* 3 M. & C. 496 ; *Brumridge* v. *Brumridge,* 27 Beav. 5 ; *Hanbury* v. *Kirkland,* 3 Sim. 265 ; *Moses* v. *Levi,* 3 Y. & C. 359 ; *Adair* v. *Brimmer,* 74 N. Y. 531 ; *Croft* v. *Williams,* 88 id. 384 ; *Earle* v. *Earle,* 93 id. 104 ; *Wilmerding* v. *McKesson,* 103 id. 329 ; *In re Cornell,* 110 id. 351 ; *Bruen* v. *Gillet,* 115 id. 10 ; *In re Myers,* 131 id. 409 ; *State* v. *Guilford,* 15 Ohio St. 593 ; *Deadrick* v. *Cantrell,* 10 Yerg. 23 ; *Thomas* v. *Scruggs,* Id. 400 ; *McMurray* v. *Montgomery,* 2 Swanst. 374 ; *Maccubbin* v. *Cromwell,* 7 G. & J. 157 ; *Edmunds* v. *Crenshaw,* 14 Pet. 166 ; *Wallis* v. *Thornton,* 2 Brock. 434 ; *Sparhawk* v. *Buell,* 9 Vt. 41 ; *Clark's Appeal,*

6 Harris, 175 ; *Ducommun's Appeal*, 5 id. 268 ; *In re Evans*, 2 Ashmead, 478.) The trustees Lynch and Develin were also liable for the rents of the premises collected by the agent of the three trustees, and by him paid over to Quinlan. (Perry on Trusts, § 402.) The trustees Lynch and Develin were also liable for that portion of the fund derived from sales of real estate, which did not go through the account of the trustees in the United States Trust Company. (Hill on Trustees, § 312.) There was no reasonable necessity which required Lynch and Develin to turn over to their co-trustee Quinlan the bulk of the trust fund, and leave it to be dealt with by him at his sole pleasure, and their action in so doing cannot be justified either upon principle or upon the facts of the case. (Lewin on Trusts, 290 ; *Gill* v. *Atty.-Gen.*, Hardres, 314 ; *Booth* v. *Booth*, 1 Beav. 125 ; *Atty.-Gen.* v. *Gleg*, 1 Atk. 356 ; *Macklow* v. *Fuller*, Jacobs, 198 ; *Hengst's Appeal*, 24 Penn. St. 413 ; *Ducommun's Appeal*, 5 Harris, 268 ; *Hughlett* v. *Hughlett*, 5 Humph. 474.) There is no estoppel in favor of the trustees Lynch and Develin. (Pom. Eq. Juris., § 1883 ; *Rehden* v. *Wesley*, 29 Beav. 213 ; *Underwood* v. *Stevens*, 3 Meriv. 712 ; *Lincoln* v. *Wright*, 4 Beav. 427.) The trustees are not entitled to commissions. (*Cook* v. *Lowry*, 95 N. Y. 103 ; *Gordon* v. *Matthews*, 30 Md. 235 ; *Hermstead's Appeal*, 60 Penn. St. 423 ; *McKnight* v. *Walsh*, 24 N. J. Eq. 498 ; *Warbass* v. *Armstrong*, 10 id. 263 ; *Lathrop* v. *Smalley*, 23 id. 492 ; *Blauvelt* v. *Ackerman*, Id. 495 ; *Norris' Appeal*, 71 Penn. St. 106 ; *Stearby's Appeal*, 38 id. 525.)

PECKHAM, J. This action was brought to obtain an accounting from the defendants Quinlan, Lynch and Develin, as trustees under a deed of trust executed by Walter Roche to them in 1872. The action was commenced in 1875, and John T. McGowan, who subsequently died, was at that time plaintiff. The defendant John Develin died February 23, 1888, and the defendant James Lynch died August 5, 1888. The action was continued against the respective executors of the deceased defendants.

The material facts in regard to the action are these: For some time prior to November 17, 1871, Walter Roche had been vice-president of the Guardian Savings Institution. The bank was doing business in the city of New York, and on the date mentioned it was insolvent. Mr. Roche had been one of the managing officers of the bank, and through his influence quite a number of individuals and institutions had become depositors therein, among them being the Foundling Asylum, which had a deposit of nearly $100,000 on that day. Mr. Roche being desirous of securing, as far as possible, the depositors in the bank, went, in company with a friend, to the office of the defendant Develin for the purpose of consulting as to the course to be pursued. Upon such consultation it was decided that a receiver ought to be appointed at once for the savings bank, and it was the subject of discussion as to who should be chosen. Finally it was determined that Jeremiah Quinlan, a friend of Mr. Roche, should be the receiver, and then the question of Mr. Roche's individual action was discussed. Ultimately he decided to execute a trust deed to the defendants Develin, Lynch and Quinlan, by which a large amount of real property owned by him was to be conveyed to the trustees, who were to sell the same and with the proceeds pay the depositors of the savings bank that proportion of their deposits which might be owing to them and which would not be paid by the receiver of the bank. Payments were only to be made to those who would execute subrogations to Mr. Roche of their rights against the bank to the extent of such payments, and they were to be executed by a time specified in the trust deed. Mr. Quinlan, the receiver and one of the trustees, was well known to Mr. Roche and was entirely acceptable to him, both as a receiver and as a trustee. He was a prominent business man of excellent character and considerable financial ability, residing and doing business in the city of New York. Mr. Lynch was also a resident of the city, engaged in business there, and a man of integrity and good business capacity. Mr. John E. Develin was a lawyer of high standing in his profession,

and he was also the general counsel and adviser for the Foundling Asylum. The trust deed conveyed to these trustees a large amount of real estate situated in the city of New York, and it was conveyed to them upon a trust to sell and convey the same, or so much as might be necessary, and with the proceeds pay the depositors of the bank as already stated. By the terms of the deed the time within which the payments were to be made was stated, but it was subsequently extended until sometime in October, 1874. This trust deed was not joined in by Mrs. Roche, and subsequently, and on the 24th day of January, 1872, the trustees re-conveyed the real estate mentioned in that November trust deed back to Roche and received at the same time another deed substantially the same as the November deed, in the execution of which Mrs. Roche joined.

The present plaintiff, Randolph F. Purdy, is the successor. of McGowan, the original plaintiff, who was made the grantee under a deed subsequently executed by Roche, conveying to McGowan his remaining interest in the property conveyed to these three trustees and which might remain after their performance of the duties devolved upon them by that deed. The plaintiff claims a right to call these trustees to an account, because by the terms of the trust deed to them they were to pay only such depositors as gave subrogations within the time limited in the trust deed, and after such time no payments could be made and the property was then to be conveyed back to the grantor whose residuary interest the plaintiff represents. We do not deem it necessary upon this appeal to decide upon the objections raised by the defendants as to the right of the plaintiff to maintain this action for an accounting. We assume he has such right, and the question remaining is whether any cause of action has been proved against the defendants Develin and Lynch to account for moneys which were turned over to Quinlan under the circumstances hereinafter referred to.

The trustees sold a large amount of real property and realized large sums from such sales. Part of the proceeds of

the sales they deposited with a trust company in the city of New York, but subsequently and from time to time drew it from such company and transferred it to Mr. Quinlan for the purpose of having him at once proceed and pay the depositors and take the subrogations as provided for in the trust deed. The trustees also appointed an agent for the purpose of collecting the rents of the real estate while it was in their hands and before it was sold by them, and such agent collected a little over $18,000, and turned it over to Mr. Quinlan as one of the trustees. Several sums, amounting in the aggregate to over $17,000, being the proceeds of sales of a portion of the real estate, came into Mr. Quinlan's hands directly and were never in the possession or under the control of the other trustees. Altogether there came into Mr. Quinlan's hands, including the items of $18,000 for rents, and the $17,000 proceeds of sales of real estate above mentioned, a total of $262,254.25 (being the whole amount of the trust fund converted into money), and he is credited with having paid out $229,291.29, leaving a balance of $32,962.96 of the trust fund to be accounted for.

The referee to whom the action was referred found these facts and charged all three of the trustees with the total amount that had come into Quinlan's hands, and credited them with the amount paid out by him, and charged them with the balance as due by reason of their position as trustees. The referee charged the trustees with interest on the balance unaccounted for from the time when the demand was made for it up to the date of his report, in January, 1880, which interest amounted to a little over $10,000, and upon the whole sum, amounting to over $43,000, interest was cast from the date of the report until the day of the entry of judgment, February 10, 1883, amounting to over $8,000, and these items, together with over $1,800 costs, made a total of $53,420.58, for which judgment against these defendant trustees was entered February 13, 1883. The ground of liability upon which the referee proceeded was that the defendants Develin and Lynch were guilty of negligence in transferring to their co-trustee, Quin-

lan, the moneys arising from the sales of the real estate, which had come into their hands and which had been deposited in their names to their joint credit with a city trust company, although such transfer was made for the purpose of immediate distribution by Quinlan; and the referee held that such act was a negligent one, and on account of such neglect the two trustees were liable for the failure of Quinlan to account for the whole of the trust moneys that actually came into his hands.

Upon appeal by Develin and Lynch to the General Term that court held that the $17,000 item above referred to, being the proceeds of the sales of real estate which never had come into the actual possession or control of the two trustees, but which had been paid directly to Quinlan, ought to be deducted from the amount of the recovery, and it directed that such sum, with interest, amounting in all to over $20,000, should be deducted from the judgment with the consent of the plaintiff, or else that the judgment should be reversed and a new trial granted. The plaintiff consented and the amount was deducted from the judgment in the action, and the defendants Develin and Lynch appeal to this court.

The learned judge at General Term who delivered the opinion of that court stated with his usual accuracy and clearness the general rules governing the liability of trustees in cases of this nature. We fully agree with that court as to the rules which usually obtain regarding the liability of trustees in such cases. It is exceedingly important that they should not be relaxed in any case where the facts bring it within their fair application. Trustees should understand that in taking responsibility as such they do not enter upon merely formal obligations. The one who creates a trust either by deed or will has the right to understand that the trustee in accepting it, while not bound to the greatest possible vigilance in the execution of his duties, is yet bound to give such care and attention to their performance as intelligent men acting in like circumstances would give to their own affairs. In applying, however, the general rules of liability to this case

we think the court below has not given full weight to the peculiar circumstances surrounding it, and it is upon those unusual and most exceptional facts that we base the decision of this case. Such facts take it out of the ordinary rules for the conduct of trustees and leave the case to be judged with reference to its own peculiar and extraordinary surroundings.

When the first trust deed was executed Mr. Quinlan was to be the receiver of this savings institution. This fact was known to Mr. Roche, and, indeed, the designation of the receiver may be said to have been his own. Aside from that Mr. Quinlan was a business man whose capacity and judgment were well known and whose character and integrity were unblemished. The evidence would seem to show that he was probably named as one of the trustees in this trust deed because of his being also named as receiver. The fact was also patent that some office would be necessary for the receiver in which to discharge his duties. He would necessarily have possession of all the books and papers belonging to the bank and it would be necessary to refer to them in making up a list of its depositors and the amount due each respectively. Most of the depositors it may be assumed were personally unknown to the trustees and in many instances it would be necessary to resort to the identification book in order to determine the fact of identity of depositor and claimant. No payment could properly be made on the part of the trustees to any depositor until reference had been made to these books, and the amount of the payments by the receiver, if any, had been ascertained. Under these circumstances what would be more natural than to select that trustee who was also receiver as the proper party to make those payments? There were over 700 depositors. Their debts were due at once, and it could not be accurately known what amounts ought to be in the hands of the paying trustee at any one time in order to permit him to meet all demands. Mr. Quinlan was known and respected for his ability and integrity. He was the receiver, and he alone had all conveniences for ascertaining the depositors and the

amounts due them. There was absolutely no reason to fear or suspect him, and the payments were to be made at once as the creditors should appear. Taking all these circumstances into consideration, we are unable to see that the defendants Develin and Lynch were guilty of such negligence in transferring these funds as to make them liable for the failure of Quinlan to account for all the money that came into his possession as one of such trustees. There is no evidence and no claim that the trustees were guilty of any neglect in the management of their trust, so far as the sale of the real estate and its conversion into money is concerned. There is no claim made and no evidence given upon the subject of any alleged neglect to sell in the best mode, or that on account of any neglect the highest price was not obtained which the property could be fairly expected to bring. The whole charge of neglect lies in the fact that after the conversion of this portion of real estate into money and the deposit of a portion thereof with the trust company subject to the order of all three trustees, the portion so deposited was subsequently from time to time transferred to Quinlan for the purpose of immediate payments by him to the depositors of this broken bank. If the funds had been transferred to Quinlan at a time when there was no pretense of their being needed in order to pay the depositors, and had been thus transferred for his simple convenience, and so that they were liable to be used in the private business of the trustee, a very different case would be presented. But here there is no evidence that the sums transferred to Quinlan were out of proportion to the probable needs of his payments, as those needs existed from time to time. We do not think the trustees were bound to limit their payments to those which might probably be necessary for each day's disbursements by their co-trustee; they were entitled, under all the circumstances of this case, taking into consideration the large amounts due some of the depositors, to transfer to such trustees funds enough to answer all contingencies and more than enough for any one day's or one week's payments. It is unquestionable that in

the performance of their duties as trustees they had a right to appoint an agent to do some portion of their work, and it is equally undoubted that in appointing an agent they were not precluded from appointing one of their own number. On the contrary, it would seem as if every argument which might be urged in favor of the right to appoint an agent generally, would apply with greater force to the appointment of one of their own number. Here in about two years the trustees sold the real estate which has been sold and collected quite large sums in rents and made payments to the depositors and otherwise accounted for the moneys which came into their possession, so that out of a total of $262,000 only $32,000 remained unaccounted for in the hands of Quinlan. Payments were being made from time to time by Quinlan during this whole period, and there is nothing in the record here that we can see from which the inference ought to be drawn that there was any actionable neglect by either of these two trustees in the performance of their trust.

We have read many of the authorities on this branch of the law. They are numerous and the courts have said that if the trustee unnecessarily do an act by which the funds are transferred from the joint possession of all to the sole possession of one, the trustee who does this unnecessary act must be held liable for the due application of the fund by his co-trustee. The question is what is meant by the word "unnecessarily," and it would seem to be that an act is unnecessary when done outside of the usual course of business pertaining to the subject. In *Bruen* v. *Gillet* (115 N. Y. 10) the funds were turned over to one of the assignees without the slightest necessity, and they continued in the possession of the assignee with the knowledge of his colleague that they were being used in his private business. In *Gasquoine* v. *Gasquoine* (1894, 1 Ch. 470) an act which was done in the regular course of business in administering the property was held not to be unnecessary, and the trustee was held not liable for a resulting loss by the dishonesty of his co-trustee. Numerous authorities are cited in these two cases upon this subject.

In this case we must say that it was within the fair meaning of the word a necessity; that is, it was an usual, proper and ordinary way to make payments to these 700 odd creditors under the circumstances above detailed, through the hands of one who was acting in the double capacity of trustee and receiver, and who in his latter character had all the data requisite to make the payments and to obtain accurate information as to the amount of the indebtedness in each case. And we do not think it was necessary for each trustee to attend and sign each check and make such payment instead of placing sums from time to time in the hands of the trustee-receiver and permitting him to make the payments.

Although these general views lead to a reversal of this judgment, yet we desire to say that we agree with the General Term that the $17,000 received by Quinlan directly from the sale of some portion of the real estate was a sum which he had the right to collect as trustee, and, having collected it, his co-trustees, under the circumstances of this case, were not responsible for the proper distribution of such fund by him. On the other hand, we think the General Term and the referee have held the defendants Develin and Lynch to a liability based upon a presumption untrue in fact with regard to the item of about $18,000, rents received by the appointed agent of the trustees and paid by him over to Quinlan. They have held the two trustees chargeable with this sum on the ground that, as this agent to collect the rents had been appointed by all of the trustees, such rents, when collected by that agent, were legally in their joint possession, and that when the agent paid them to Quinlan it must be held that they were paid by the direction of Develin and Lynch, and hence those defendants are liable to account therefor. We do not think that this is a solid ground of liability in this case, even if we assumed they would be liable if they directed the payments. Upon a question of title, the moneys as soon as they came into the hands of the agent became the property of the trustees, but in this case it is not a question of title. The ground of liability is personal neglect, and it must be remembered that the joint

appointment of the agent to collect the rents and his collec-
tion of them did not, in point of fact, bring those moneys into
the actual possession of either Develin or Lynch.   The title
was in all three trustees; the actual physical possession was in
the agent; and when that agent paid them over to one of the
trustees without in fact any direction from either of the others,
such direction ought not to be imputed to them by a legal
fiction when in truth it was not given.   The agent, under the
circumstances of this case, might naturally pay the rents over
to Quinlan, because the latter was at the receiver's office in
the discharge of his duties as receiver of the bank at a known
place of business, and where the agent could at all times find
him to make payment, and where the business of the trustees
might very properly have been conducted.   Under those
conditions we think we should not indulge in legal con-
clusions for the purpose of holding the trustees to an
accountability by reason of implied directions by them when
the fact of such directions was not proved and did not exist.

If this item of $18,000 were added to the $17,000 item
deducted by the General Term, the total of these two sums
would be greater than the amount which the referee found
had not been accounted for out of the whole amount that had
been received by Quinlan, and so there would be nothing due
the plaintiff for which Develin and Lynch could be held liable.

We think, upon a careful deliberation over this unusual and
exceptional state of facts, that the plaintiff failed to make out
a cause of action for negligence against the defendants Deve-
lin and Lynch; and while, as we said before, the rules
governing the liability of trustees should be strictly main-
tained, and they should be held to the most rigid accounta-
bility for the performance of all their duties as such, yet in
all cases the true question is, taking into consideration all the
facts and circumstances, has the trustee employed such pru-
dence and diligence in the discharge of his duties as in general
men of average prudence and discretion would under like
circumstances employ in their own affairs, and in determining
the proper answer to be given to that question we are to look

at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place by reason of which the loss has occurred.

Judged by that standard we think the conclusions of law of the referee holding these defendants Develin and Lynch liable are erroneous, and the judgment as to them should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.