## In the Matter of the Estate of Edward S. Pratt, Deceased.

Surrogate's Court, New York County, April 16, 1932.

*Theodosius Stevens* [*Henry Wynans Jessup* of counsel], for the accountant.

*Frederick R. Coudert, Jr.*, and *Thomas W. Kelly*, for the objectants.

FOLEY, S. The accounting party here is the ancillary administrator c. t. a., d. b. n. Objections have been filed to his account by the next of kin of the deceased sole legatee under the will of the testator.

(1) A preliminary question arose during the proceeding as to the right of these parties to appear. The surrogate held that the next of kin were entitled to intervene. The accounting administrator was originally appointed in Alabama, the State of residence of the testator. He is also the administrator there of the deceased sole legatee's estate. His contention in effect is that he may account in one representative capacity to himself in another representative capacity, without the presence of the persons really interested. In proceedings of this kind the law wisely extends to the persons actually interested in the deceased beneficiary's estate the right to be cited, to participate, and object to the accounting party's acts

and conduct. (Surr. Ct. Act, § 262, subd. 10; *Fisher* v. *Banta*, 66 N. Y. 468, 481; *Matter of Haigh*, 125 Misc. 365; *Matter of St. John*, 104 App. Div. 460, 464.) The rule applies alike to an ancillary representative appointed in an estate, as well as to an original representative. It is of special importance because the decree settling the ancillary account may be accepted as conclusive by the domiciliary court. It prevents an embezzling or negligent representative or his surety from escaping liability in this jurisdiction which granted him letters. It subjects his accounting here to the scrutiny of those directly interested in a faithful administration of the assets which have come into his possession.

(2) Under the provisions of section 166 of the Surrogate's Court Act, an ancillary administrator has the same rights, powers and duties and is subject to the same liabilities as an original executor or administrator to whom letters have issued in the Surrogate's Court. Not only a parallel statutory obligation is imposed, but the general rules as to the conduct of the ancillary administrator are similar to those applying to representatives appointed directly within our jurisdiction. (*Smith* v. *Second National Bank*, 169 N. Y. 467; *Lockwood* v. *U. S. Steel Corp.*, 209 id. 375; *Wedemann* v. *U. S. Trust Co.*, 258 id. 315, 318.) We have thus applicable here to the conduct of the ancillary administrator the rules relating to the actions of original executors and administrators.

Certain assets of the estate, consisting of shares of stock and bonds, have been retained by the ancillary administrator and still remain undisposed of. Objection is made to their retention. Under the special circumstances of this estate I hold that the accounting representative should not be surcharged with the shrinkage in value of these securities or for negligence in withholding them from sale. The general rules as to the liability for surcharge by a representative retaining securities have been comprehensively stated in the recent decision of the Court of Appeals in *Matter of Clark* (257 N. Y. 132). That case involved the liability of a trustee. A surcharge was denied. Other decisions have dealt more specifically with the obligations of an executor or administrator in the sale of estate securities formerly owned by the decedent. (*Matter of Weston*, 91 N. Y. 502; *Matter of Varet*, 181 App. Div. 446; affd., 224 N. Y. 573; *Matter of Lazar*, 139 Misc. 261, HENDERSON, S.; *Matter of Winburn*, 140 id. 18, SLATER, S.) In all of these cases the proofs were held not to justify a surcharge of the representatives for the decline in the value of the assets held by them. *Matter of Weston* (*supra*) involved the holding of securities during the panic of 1873. *Matter of Varet* applied to the crisis which arose at the commencement of the World War in 1914 and the effect of the closing of the New York

Stock Exchange immediately after the outbreak of the war. The *Lazar* and *Winburn* cases dealt with circumstances attendant upon the present financial depression. It is also the established rule that the special and distinctive facts of each proceeding must determine the liability or exoneration of the particular fiduciary.

In the pending estate the securities retained consisted in great part of those usually regarded as seasoned and high-grade investments. Among them were the preferred stock of the United States Steel Corporation and the stock of the American Telephone and Telegraph Company. Their nature may have well justified the contemporary exercise of the judgment of the ancillary administrator in refraining from selling. Moreover, during several months of the administration, the exact location and residence of the next of kin of the deceased legatee were unknown to the accounting representative. One of them resides in the Argentine Republic, the other in France. This circumstance might properly have led to postponement of sale. There was sufficient cash in the estate left by the decedent and accumulated from income to adequately secure the payment of any New York debts, administration expenses and taxes. The ancillary representative might have elected, after authorization by the decree of the surrogate, to transmit the specific securities to the domiciliary jurisdiction. (*Wedemann* v. *U. S. Trust Co., supra*, 319, citing *Smith* v. *Second National Bank, supra*.) Section 164 of the Surrogate's Court Act contemplates such a discretion by authorizing the transmission of " the money *and other personal property* of the decedent " received by the ancillary administrator to the State where the principal letters were granted, unless the surrogate shall decree otherwise.

Seventeen months elapsed between the time of the issuance of letters and the verification of the account. Twenty-two months elapsed to the time of the filing of the account. The values of the securities were not substantially diminished during the latter period. The large decline and book loss in value took place during the pendency of the accounting proceeding. The loss in values after the proceeding was begun and before it was brought on for trial was not occasioned by any negligence on the part of the administrator. Nor did the objectants, during this period, at any time insist upon the immediate sale of the securities. They were content to permit them to remain.

There is no evidence of bad faith or fraud or dishonesty on the part of the administrator or proof of personal advantage accruing to him. There was an error of judgment in not making the sale of stocks earlier in the course of administration. That mistake, however, in the absence of negligence, cannot be made the basis for

an award of pecuniary damage against the accounting party. In *Matter of Clark* (257 N. Y. 132) Judge KELLOGG stated in his opinion: " In determining whether the acts of a trustee have been prudent, within the meaning of the rule, we must ' look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place ' (per PECKHAM, J., in *Purdy* v. *Lynch,* 145 N. Y. 462, 475); for it is an obvious truth that ' a wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by ' (per COLLIN, J., in *Costello* v. *Costello, supra* [209 N. Y. 252], at p. 262); and it is impossible to say that trustees are wanting in sound discretion ' simply because their judgment turned out wrong ' (per HOLMES, C. J., in *Green* v. *Crapo,* 181 Mass. 55, 58)." Under all the circumstances, therefore, the claim in this estate for a surcharge against the representative should be overruled.

The objection to the payment of counsel fees of McDougall Hawkes, attorney for the deceased executrix, is overruled.

A further hearing will be held on the 2d day of May, 1932, at ten-thirty A. M., with respect to the remaining questions as to the compensation of the attorney and counsel for the ancillary administrator and as to whether distribution shall be decreed directly to the persons interested, or transmissal of the funds and assets to the domiciliary estate authorized by the decree.