In the Matter of the Estate of SARAH L. SPRONG, Deceased, and J. WHITE SPRONG, Deceased.

Surrogate's Court, Albany County, July 11, 1932.

*Joseph Rosch,* for the executor and accounting administrator.

*George Brussel, Jr.,* for the objectant.

SCHENCK, S. In the proceeding upon the accounting of the executor and administrator c. t. a. the issues on the objections filed to the account were tried by the court.

Sarah L. Sprong died a resident of Albany county on January 3, 1930, leaving a last will and testament, by which she gave her estate to her husband and their three adult children, Harwood O. Sprong, a son, Florence Sprong Hammond and Elizabeth Sprong, daughters. Her husband, J. White Sprong, was named executor of her will. Prior to the probate of the will of Sarah L. Sprong and on January 5, 1930, J. White Sprong died testate, leaving his property by will to the three children above named in equal shares. The National Commercial Bank and Trust Company of Albany was designated as the executor in said will. Both wills were admitted to probate on January 17, 1930, the National Commercial Bank and Trust Company of Albany being appointed administrator with the will annexed of the estate of Mrs. Sprong and the executor of the will of Mr. Sprong. The assets of the two estates consisted mainly of small holdings of shares of stock in a large number of corporations. Some of these stocks were inactive and difficulty arose in completing the inventories by reason thereof. The inventories were completed September 23, 1930. The executor and administrator c. t. a. was obliged to obtain waivers from various foreign States as well as from the State of New York in order that transfers of the corporate securities, forming the bulk of the assets

of the estates, could be accomplished. Some delay occurred in obtaining these waivers, but it does not appear to have been the result of any negligence on the part of the representative of the two estates. The last waiver was obtained on December 20, 1930.

The proceeding for the final settlement of the accounts of the executor and administrator c. t. a. was commenced October 10, 1931, and on October 29, 1931, the return day of the citation, Harwood O. Sprong filed objections to the accounts, which objections may be divided into two classes, *first*, that the accounting party, during its administration of the estates, sold certain securities and the objectant asserts that such sales were not made promptly, but were delayed until a time when these securities had depreciated in value and that such delay constituted negligence on the part of the representative of these estates. The *second* class of objections relates to a considerable number of securities still undisposed of and which the accounting party desires to turn over in kind to the distributees, claiming that these securities were not sold for the reason that the three distributees had requested it not to sell, and agreed to take in kind. The objectant maintains that he was not a party to such agreement and that no such agreement was made in his behalf by any one authorized so to do and that the accounting party was negligent in not disposing of these securities, whose values have materially decreased.

Answering both objections, the accounting party maintains that immediately upon its qualification it was given to understand by the three distributees that it was their desire that none of the securities of the estate should be sold except such as might be necessary to provide funds to pay the expenses of administration, the said distributees being desirous of taking their shares in kind; that at no time did any of the three distributees demand that the securities be sold, and that the accounting party believed that in retaining these securities it was carrying out the desires of the distributees.

The accounting party offers evidence through its trust officer that the two sisters and the brother came to its banking offices soon after the death of their parents and stated that they did not desire to have these securities sold, same having been purchased by their father and held by him and their mother for a considerable period. There is a sharp question as to whether or not the brother was present on this occasion, but it can unquestionably be found in the evidence that the brother, the objectant herein, was repeatedly advised that the bank actually believed that the distributees did not wish these securities sold. The evidence further discloses that the objectant was paid his share of the cash received as the proceeds

of certain securities actually sold; that he was advised of the proposed division of the securities held; that he talked with his sister over the telephone relative to the proposed division, and when asked if he did not intend that his sister represent him in the matter, he stated as a witness in this proceeding that he could not answer the question because if he did he feared it might hurt his case. The evidence also establishes the fact that the two sisters have taken their shares in kind and have released the accounting party from all claims.

While the objectant denies that he ever specifically agreed that he would take his share of the estate in kind, he offers no evidence that he demanded that the accounting party sell the securities or that he suggested such course. He apparently equivocates somewhat when he says that he did not know whether he would get the securities or cash and that if the stocks had been going up he would not have sold himself, but would have held them.

From the whole evidence it is apparent that the objectant was at all times advised that the trust company was laboring under the honest belief that it was holding these securities at the request of the distributees and under the impression that these distributees, including the objectant, desired to take their shares of the estate in kind. It would seem that with the knowledge he possessed it was incumbent upon him to advise the bank that he refused to assent to its holding these securities. Obviously, he should not have permitted it to labor under the belief that it held the same pursuant to the expressed desires of all of the distributees. He does not charge the bank with dishonesty or fraud, nor does he claim that it endeavored to gain a profit for itself through the management of the estates. Assuming, however, that no agreement was ever made between the objectant and the accounting party that the latter hold the stocks and distribute in kind on a final accounting, may it be found that the bank has been negligent in not selling the securities? In *Matter of Parsons* (143 Misc. 368) this court stated what appears to be the rule of law consistently followed by the courts of this State and in other jurisdictions, and that is that fiduciaries are bound to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent men of discretion and intelligence in like matters employ in their own affairs. (*Costello* v. *Costello*, 209 N. Y. 252; *Matter of Taylor*, 277 Penn. St. 518; *Matter of Weston*, 91 N. Y. 502; *Matter of Clark*, 257 id. 132.) There is a broad distinction between negligence and mere error of judgment and a fiduciary acting honestly and with ordinary prudence should not be held liable " for unfortunate results which he could not be expected to foresee and was powerless to

prevent." (*Ormiston* v. *Olcott*, 84 N. Y. 339; *Matter of Clark, supra.*)

From the evidence it is apparent that the accounting party acted in good faith and with prudence and diligence and it should not be condemned for its failure to prevent what subsequently occurred. A wave of depression had engulfed the country; securities of all sorts, including those of the highest class, were rapidly shrinking in value. A prudent business man, dealing with his own investments, would have been in doubt as to whether he should hold or sell. As was recently said in a somewhat similar proceeding (*Matter of Pratt*, 143 Misc. 751, at p. 753), " it is also the established rule that the special and distinctive facts of each proceeding must determine the liability or exoneration of the particular fiduciary." Upon the " special and distinctive facts " of this proceeding, there should be exoneration. The remarks of my learned colleague, Surrogate FOLEY, in *Matter of Pratt (supra)* seem pertinent here: " There is no evidence of bad faith or fraud or dishonesty on the part of the administrator or proof of personal advantage accruing to him. There was an error of judgment in not making the sale of stocks earlier in the course of administration. That mistake, however, in the absence of negligence, cannot be made the basis for an award of pecuniary damage against the accounting party. In *Matter of Clark* (257 N. Y. 132) Judge KELLOGG stated in his opinion: ' In determining whether the acts of a trustee have been prudent, within the meaning of the rule, we must " look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place " (per PECKHAM, J., in *Purdy* v. *Lynch*, 145 N. Y. 462, 475); for it is an obvious truth that " a wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by " (per COLLIN, J., in *Costello* v. *Costello, supra* [209 N. Y. 252], at p. 262); and it is impossible to say that trustees are wanting in sound discretion " simply because their judgment turned out wrong " (per HOLMES, C. J., in *Green* v. *Crapo*, 181 Mass. 55, 58).' "

The objections filed in this proceeding are dismissed and the accounts will be judicially settled and allowed. Submit decree in accordance with the foregoing memorandum.