reference to sections 3 and 4 of the original law, no express modification or repeal thereof, and the amendatory act not being inconsistent with those sections of the original law, the amendatory act cannot be held to have modified or repealed these sections by implication. Davis v. Supreme Lodge, 165 N. Y. 159, 166, 58 N. E. 891, where the rules applicable to repeal of statutes by implication are clearly stated.

Prior to the enactment of the general tax law of 1896, the property of a municipal corporation, situate beyond the limits of the corporation, and held for a public use, was exempt from taxation in the towns where it was located; but by sections 3 and 4 of the general tax law such property was by the legislature expressly subjected to taxation in such towns. City of Rochester v. Coe and City of Amsterdam v. Hess, above. The court of appeals in the Hess Case said this was in accordance with natural justice as between the taxpayers of the towns and the municipality receiving the benefits from the property. We see no reason why we should struggle to hold this property again exempted from taxation by a law which does not make the intention of the legislature clear to provide for such exemption. Our conclusion is that the order appealed from should be reversed, with costs, and the proceedings remitted to the special term of the supreme court for such further action as shall be necessary to give effect to this decision. So ordered. All concur.

---

(59 App. Div. 370.)

### ALBANY EXCH. SAV. BANK v. BRASS et al.

(Supreme Court, Appellate Division, Third Department. March Term, 1901.)

1. TRUSTS—POWERS—CONVEYANCE BY TRUSTEE.

Where land is conveyed to a trustee, with full power to sell and convey the premises and invest the proceeds for the purposes of the trust, and he executes a conveyance fair on its face, reciting the receipt of a sufficient consideration, the instrument must be deemed a valid execution of the power, as provided by Real Property Law, § 155, in favor of a subsequent purchaser in good faith, since such trustee had no right to make such conveyance except by virtue of the power.

2. SAME—REMAINDER—PURCHASE—CESTUI QUE TRUST.

Where one possessing a life interest in real property by virtue of a trust deed buys and receives a conveyance of the remainder, he thereby becomes entitled to it as much as though it had been devised to him or it had descended to him as an heir at law, since a cestui que trust has full power to purchase a remainder.

3. SAME—CONSTRUCTIVE NOTICE—RECORDS—DEEDS OF OTHER PROPERTY.

Where a purchaser of real property in good faith purchases from the one in possession and having an apparently good title, under conveyances good on their face, he is not affected with constructive notice of the contents of duly-recorded conveyances of other property, though the title of his grantor is acquired through a trust deed, and such other conveyances show a violation of the trust.

Appeal from judgment on report of referee.

Action by the Albany Exchange Savings Bank against William C. Brass and others. From a judgment for plaintiff, defendants appeal. Affirmed.

The action is brought by the plaintiff to foreclose two mortgages given by Anna Stahl and Lewis Stahl, her husband, on premises in Albany, N. Y., known as "No. 538 Broadway." On the 5th day of July, 1838, Gertrude Treat was the owner in fee of the lands in controversy in this action. At that time she had one son, Richard J. Treat. Her only other child, Eliza Treat, had married John W. Bay, and was then dead, having left three children her surviving,—Richard S. Bay, Anna Bay, and William A. Bay. On that day (July 5, 1838) she executed and delivered to John W. Bay, the husband of her deceased daughter, a deed conveying substantially all her property. This deed is a trust deed, with power, among other things, to grant, sell, and convey all or any of the real estate, and out of the proceeds to pay, among other things, the debts of the grantor, or debts which she may owe at her death, and to apply the whole or so much as she may demand of the principal of such sales, and the whole or as much as she may demand of the rents, income, and profits of the real and personal estate, to her during her life, and to keep the proceeds of real estate so sold invested, and out of the rents, income, and profits to apply the sum of $500 annually to the use of her son, Richard J. Treat, during his life, and to apply so much of the balance as may be necessary to the education, support, and maintenance of her three grandchildren, and the balance of the rents, income, and profits to be applied by the party of the second part to his own use and benefit for and during his natural life, and, after the death of said party of the second part, then to have and to hold the said property to said three grandchildren, their heirs, executors, administrators, and assigns, in equal shares, forever. With a further power to said party of the second part, on certain contingencies, to secure the income of one-third to any one of said grandchildren, if living, with the remainder to said grandchildren's children, if any; if not, to other grandchildren. Gertrude Treat died in 1839, and her son, Richard J. Treat, died unmarried in 1839, about two months after his mother's death. On the 27th day of November, 1838, John W. Bay, the grantee in the trust deed, released, transferred, and reconveyed the property therein described to said Gertrude Treat, reciting in such conveyance that he so conveyed "so far as the said party of the first part can release the same from all trust liens and incumbrances whatsoever created by the aforesaid deed"; and in this conveyance there is a covenant that the grantor has not sold or incumbered any part of the property so conveyed to him. For the stated consideration of $10,000, Richard J. Treat, a few days prior to his death, and on the 16th day of April, 1839, and after the death of said Gertrude Treat, executed a release and quitclaim to John W. Bay, in trust for the infant children of said John W. Bay, of all his right, title, and interest in and to the trust property mentioned in said trust deed from Gertrude Treat, with certain exceptions not material in this controversy, to have and to hold the said released premises and estate in trust for the sole use and benefit and behoof of the said infant children, their heirs and assigns, forever. For the stated consideration of $5,000, Richard S. Bay on the 29th day of March, 1851, gave to Anna Bay a deed of all his right, title, and interest in and to certain property, including the premises in controversy. For the consideration stated as one dollar and other valuable considerations, Anna Bay on the 14th day of September, 1852, gave to William A. Bay a deed of all the estate, right, title, and interest which was conveyed to her by Richard S. Bay by the deed of March 29, 1851, and also her right, title, and interest in other property. On the 15th day of September, 1852, the day preceding the marriage of said Anna Bay to one Charles W. Brass, she gave to William Bay, her grandfather, the father of John W. Bay, the grantee in the trust deed from Gertrude Treat, a deed of all her estate, right, title, and interest in several pieces of land, including the premises in controversy, in trust (1) to receive the rents and profits thereof, and of so much thereof as shall from time to time remain unsold by virtue of the power therein contained, and apply the same to the use of the grantor during her natural life; (2) on the death of the grantor, "in case she shall leave descendants living at the time of her death, to allow such descendants, from and after her said death, to take the actual possession of said lands, * * * and receive the rents and profits thereof to their own use, as actual owners of the said lands, * * * in fee simple absolute, to them, their

heirs and assigns, forever, in the like proportion among the said descendants in which they would have inherited the same from the said party of the first part if she had died seised in fee of the said lands  *  *  *  and intestate," etc. "And it is hereby declared to be the true intent and meaning of this indenture that from and after the death of the said party of the first part the said party of the second part shall have no estate or title whatever in the said lands,  *  *  *  but that from and after that time the same, and the proceeds, or so much thereof as may have been sold and reinvested, or so much of the same and of such proceeds as then remain, belonging to the said party of the second part, shall belong in fee simple absolute to the descendants of the said party of the first part in the proportion among themselves in which they would have inherited from her, if any such be living." The deed also conferred upon the trustee power to sell any of the trust property, or so much thereof as shall be necessary for that purpose, and out of the proceeds of such sale or sales to pay existing debts; and he was also authorized and empowered to sell or mortgage and apply the avails of such sales, or the moneys raised by such mortgages, towards the discharge of any incumbrances. And he was also "authorized and empowered, in his discretion, and if he shall deem it proper so to do, from time to time, during the lifetime of the said party of the first part, to sell any portion or portions of 'the said lands,  *  *  *  and invest the proceeds of such sale or sales in any manner that he may think best; the said proceeds, when so invested, to be held upon the same trusts hereinbefore mentioned, with power to resell and reinvest the said proceeds and the proceeds thereof as often as to the said party of the second part shall seem expedient and proper." For the stated consideration of one dollar, William A. Bay on the 12th day of April, 1860, conveyed to William Bay, trustee for Mrs. Anna Brass, his successors and assigns, the premises in controversy. At least nine other deeds relating to the property contained in the Treat trust deed were executed by and between the members of the Bay family, or some of them, from the years 1851 to 1860, inclusive, none of which included the property in controversy. For the stated consideration of $12,000, the receipt whereof is thereby acknowledged, William Bay, as trustee for Mrs. Anna Brass, on the 15th day of September, 1860, conveyed by warranty deed to John W. Bay the premises in controversy. For the stated consideration of $20,000, the receipt whereof is thereby acknowledged, William Bay on the 29th day of August, 1863, conveyed to Anna Brass all the lands and property which were conveyed to him by said trust deed of September 15, 1852, which had not theretofore been sold, disposed of, or conveyed. This conveyance recites, among other things, the conveyance of September 15, 1852; the marriage of Anna Bay with Charles W. Brass; the death of the said Charles W. Brass, leaving the said Anna Brass a widow, having three infant children, the issue of said marriage; the power of sale contained in said trust deed; the receipt of the $20,000 consideration,—and then quitclaims to the said Anna Brass the premises described in detail, including the premises in controversy. Charles W. Brass died on the 19th day of April, 1863, and Anna Brass married Lewis Stahl on the 21st day of August, 1865. For the stated consideration of one dollar, John W. Bay on the 2d day of June, 1873, conveyed by quitclaim deed to Anna Stahl the premises in controversy. All of the deeds mentioned were recorded in the clerk's office of Albany county within a few weeks after their dates, respectively, except the deed from William Bay, trustee of Anna Brass, to John W. Bay, dated September 15, 1860, which was not recorded until the 16th day of January, 1873. On the 17th day of July, 1873, the plaintiff loaned to said Anna Stahl the sum of $5,000, and on the 8th day of October, 1875, the plaintiff loaned said Anna Stahl the further sum of $3,000. These loans were made on bond and mortgage in the usual form, executed by Anna Stahl and Lewis Stahl, her husband, to the plaintiff, concurrent with the making of said loans, respectively, and each of said mortgages covered the premises in controversy, and was recorded in the clerk's office of the county of Albany on or about the day of the making of said loans, respectively. John W. Bay, grantee in the trust deed from Gertrude Treat, died in December, 1877. The said Anna Stahl (formerly Anna Brass and Anna Bay) died on the 20th day of April, 1892. The defendants, William C. Brass, Emilia B. Trowbridge, and

Richard W. Brass, are the only heirs at law of the said Anna Stahl. The defendants claim that the consideration recited in the deed from William Bay, as trustee for Mrs. Anna Brass, to John W. Bay, dated September 15, 1860, and the consideration recited in the deed from William Bay to Anna Brass, dated the 29th day of August, 1863, was never in fact paid, and evidence was offered tending to establish such contention.

Argued before PARKER, P. J., and SMITH, KELLOGG, and CHASE, JJ.

Richard W. Brass, Pierre E. Du Bois, and Edwin Countryman, for appellants.

A. V. De Wit and William L. Learned, for respondent.

CHASE, J. We assume, for the purposes of this opinion, that the trusts created by the deed from Gertrude Treat to John W. Bay of July 5, 1838, were never legally released or abandoned. Under that deed title to the property described therein was vested in the grandchildren of Gertrude Treat, subject to the trusts in and by said deed created, and also subject to being entirely defeated by the exercise by John W. Bay of the power of sale contained in said trust deed. The defendants in this action were not parties to that trust deed, and John W. Bay was not a trustee for them. All of the parties to this action assume that Richard S. Bay and William A. Bay, as well as Anna Bay, had a right to sell and convey their respective reversionary interests in the property in said trust deed described. John W. Bay died in 1877, without having exercised the power of sale contained in that deed. The trusts therein created having ended, title to the several pieces of property in said trust deed described now vests in the legal grantees of the grandchildren of said Gertrude Treat. We assume, for the purposes of this opinion, that the appellants are right in their contention that William Bay, by virtue of the trust deed from Anna Bay dated September 15, 1852, and by virtue of the conveyance to him by William A. Bay dated April 12, 1860, became the owner, as such trustee, of the whole remainder in fee of the property in controversy. The trust deed to William Bay gave to him not only power to sell for certain express purposes named in the trust deed, but also full power to sell the lands and premises therein described, and to invest the proceeds thereof as he might think best. That trust deed expressly directed the trustee to invest and reinvest the same from time to time as he should deem expedient and proper. "An instrument executed by the grantee of a power conveying an estate or creating a charge which he would have no right to convey or create except by virtue of the power shall be deemed a valid execution of the power although the power be not recited or referred to therein." Real Property Law, § 155. On the 15th day of September, 1860, William Bay, trustee for Mrs. Anna Brass, conveyed to John W. Bay the premises in controversy, by warranty deed, in which deed is a recital that it is given in consideration of $12,000, the receipt whereof is thereby confessed and acknowledged by the grantor. On the 2d day of June, 1873, John W. Bay by quitclaim deed conveyed the premises in controversy to Anna Stahl. The fact that Anna Stahl had a life interest in the property by virtue of the trust deed to

William Bay did not prohibit her· from purchasing the remainder. "If one buys the remainder, he becomes entitled to it; and there never was any reason why a cestui que trust should not purchase the remainder, thereby becoming entitled to it, if he saw fit. If he did: purchase it, he became entitled to it, just as much as though it had been devised to him, or it had descended to him as an heir at law." Mills v. Mills, 50 App. Div. 227, 63 N. Y. Supp. 771. There is no proof whatever that the plaintiff had any knowledge of the alleged violation of the William Bay trust, except so far as the same appears, if at all, by the conveyances received in evidence. There is no evidence whatever that plaintiff ever saw any of these conveyances. If counsel for plaintiff saw the deeds of record which were received in evidence, other than those relating to the property in controversy, the plaintiff is not bound thereby. In Bradley v. Walker, 138 N. Y. 291, 33 N. E. 1079, the court of appeals held that there was no presumption that an agreement relating to the matter in controversy had come to the notice of the person affected thereby, from the simple fact that it was actually recorded, when the acknowledgment thereof was insufficient to entitle it to record, and the court say:

"There is no claim that he had actual notice, and no claim that he actually knew of the instrument on record in the register's office, but it is claimed. that he had notice because his counsel had searched the records. It would be going a great way to hold that we must presume that, in searching the records, counsel found such an agreement, and then presume further that he· communicated the information to his client."

Plaintiff had constructive notice only of what appeared by the conveyances relating to the property in controversy.

As already stated, appellants contend that William Bay, as trustee· for Anna Bay, after the deed to him of April 12, 1860, was the owner of the premises in question, subject to being defeated by the exercise· of the power of sale by John W. Bay under the Treat trust deed. The only deeds since that time relating to the property in controversy are the deed from William Bay, as trustee for Anna Bay, to John W. Bay, of September 15, 1860; the deed from John W. Bay to Anna Stahl, of June 2, 1873; and the deed from William Bay, as trustee for· Anna Bay, to Anna Brass, of August 29, 1863. These deeds apparently gave to Anna Bay Stahl a good title to the property in controversy. We do not see anything in these deeds that would necessarily lead an honest man, using ordinary caution, to make inquiry. There is no proof whatever that the consideration named in the deeds· from William Bay are not, in each case, full and adequate. There is nothing in either of those deeds to suggest that the consideration was· not paid as the grantor in each of the deeds confessed and acknowledged, and there was no reference in either of these deeds to any other· deeds or instruments that required further examination. Anna Stahl was in possession of the property at the time the loan was applied for, and the simple fact that the deed from William Bay, trustee, to John W. Bay, had remained unrecorded for a long time, is not,. apart from other circumstances, of itself a circumstance requiring the plaintiff to make inquiry as to other matters relating thereto, especially as Anna Stahl had a further quitclaim deed of the property

from William Bay, that recites a consideration that, so far as appears, was full and adequate. The rule applicable to cases of this kind is stated by the court of appeals in Kirsch v. Tozier, 143 N. Y. 397, 38 N. E. 377, as follows:

"What circumstances will amount to constructive notice or will put a party upon inquiry is in many cases a question of much difficulty. A purchaser is not required to use the utmost circumspection. He is bound to act as an ordinarily prudent and careful man would do under the circumstances. He cannot act in contravention to the dictates of reasonable prudence, or refuse to inquire when the propriety of inquiry is naturally suggested by circumstances known to him."

Applying the rule so laid down to this case, we are of the opinion that, so far as this particular piece of property is concerned, plaintiff is protected; and the judgment of the court below should be affirmed, with costs.

KELLOGG, J., concurs; PARKER, P. J., and SMITH, J., in result.