CLARENCE E. COSTELLO, an Infant, by OLE L. SNYDER, His Guardian ad Litem, Appellant, v. ALFRED COSTELLO et al., Respondents, and JOHN H. COSTELLO, JR., et al., Appellants.

Testamentary trusts — duties and obligations of trustees in making transfer of trust property — application of statutory provisions and legal principles regulating the investment of trust funds — trust estate consisting of interest in property and business of copartnership — when transfer of trust property by two of three trustees to the third, also a beneficiary of the trust, is not invalid.

1. If trustees in making a transfer of trust funds act in contravention of principles which the law charges them to observe, and to the injury of the *cestui que trusts*, they are guilty of constructive fraud, as a necessary consequence, regardless of their motive or intention.

2. The title to partnership property is not in the individual members of a firm, so that either may assign or transfer to another an undivided share in any specific articles, but it is in the firm as an entirety subject to the rights of the partners to have it applied to the payment of the debts of the firm and the equities of the partners, and surviving partners succeed to the exclusive possession and control of the assets and the right, within the limits of good faith, of disposing of and closing the affairs.

3. The statutory provision and the rules of equity characterizing the securities in which trust funds may be invested were adopted in the light of experience. They are not, however, absolutely exclusive, arbitrary and inflexible and must yield to the rule of necessity or safety. A more fundamental and broader principle, superseding, in emergencies or justifying conditions, the specialized rule, is that trustees are bound in the management of all the matters of the trust to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent men of discretion and intelligence in like matters employ in their own affairs. The law does not hold a trustee, acting in accord with such rule, responsible for errors in judgment.

4. The testator, who was a partner in two firms, appointed three executors and trustees, all of whom were his partners in the firms. He bequeathed the income of a one-half interest in the remainder of his estate to one of the trustees, with remainder over to his children. The will also provided that the trustees could retain this portion of the estate in the business so long as they thought fit. The trustees subsequently transferred to the beneficiary all the property for an agreed sum, the transfer to be made, however, upon the consummation of the sale by the surviving partners to a corporation of the assets and property of the firms, and to be void and canceled if such sale failed; if it took place the trustees were to receive and hold a note of the beneficiary, and as a security for its payment such part of the shares of the stock of the company received in payment by the firms for their assets, as represented the share of such beneficiary, as transferee and as a surviving partner. The sale of the partnership assets to the company and the transfer of the trust estate to the beneficiary were consummated simultaneously and as one transaction, the business of the firms then ceasing except for the purposes of liquidation. The liabilities of the firms having been discharged and the equities between the surviving partners and trustees adjusted, the trustees received as security for the note of the beneficiary the shares of the stock of the company representing his own interest

and as transferee of the trust estate. The appellants here are the children of the beneficiary, presumptively entitled to the trust estate upon his death, and they are seeking the annulment of this transfer of the trust estate to him upon the ground that it was fraudulently and wrongfully made. *Held*, that no principle of law forbade the sale by the trustees to the life beneficiary. The findings are to the clear effect that they in making the sale were not dealing with the trust estate for their direct or indirect benefit or advantage, and there is no evidence of culpable negligence.

*Costello* v. *Costello*, 152 App. Div. 280, affirmed.

(Argued April 22, 1913; decided October 21, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered August 2, 1912, which affirmed a judgment dismissing the complaint upon the merits entered upon the report of a referee.

The action is to procure a judgment annulling the transfer by Alfred Costello and Patrick C. Costello, as trustees under the will of Patrick H. Costello, to John H. Costello of the trust estate, as devised, and determining through an accounting that the trustees should pay into the trust estate a large sum of money. During the pendency of the action, Patrick C. Costello died and the United States Trust Company, as executor of his will, was substituted as a defendant in his place.

The will was probated December 29, 1890. It appointed Alfred Costello, Patrick C. Costello and John H. Costello executors. The eleventh clause gave one-half of the remainder of the estate to Alfred Costello and Patrick C. Costello in trust to pay John H. Costello the income during his life, and gave at his death the one-half to his children surviving him.

The estate consisted substantially of the interests of the deceased as a partner in two firms. The will directed that such part of the trust estate as should be in the business of the firms at testator's death should be allowed to so remain by the trustees so long as they thought fit.

The two trustees and the life beneficiary were the surviving partners of the firms. The executors, and the trustees after the transfer to them by the executors in due course of administration, permitted the interests to remain in the firms, in compliance with the direction of the testator, until April 29, 1893, when the trustees executed a writing providing for the transfer to John H. Costello of all of the interests, assets and property transferred to them by the executors for the consideration of his promissory note for $174,708.26, payable on demand, with interest to begin at the date of his death, the transfer to be made, however, upon the consummation of the sale by the surviving partners to the United States Leather Company of the assets and property of the firms, the writing and the note to remain, pending the consummation of the sale, in the hands of the attorneys of the trustees and to be void and canceled if it failed; if it took place, the trustees were to receive and hold with the note, as a security for its payment, such part of the shares of the stock of the leather company received in payment by the firms for their assets as represented the share of John H. as such transferee and as a surviving partner. It appears from the findings that on the 29th day of April, 1893, the sale of the partnership assets to the leather company and the transfer of the trust estate to John H. were consummated simultaneously and as one transaction, the business of the firms then ceasing except for the purposes of liquidation. November 1, 1895, the liabilities of the firms having been discharged and the equities between the surviving partners and trustees adjusted, the trustees received, under the writing of April 29, 1893, as security for the note of John H. Costello 3,180 shares, each of the par value of $100, of the preferred stock of the leather company, and the same number of shares, of like par value, of its common stock, as and for the shares of John H. Costello as the transferee of the trust estate, and the same number of shares of the preferred and com-

mon 'stock as and for his shares as a surviving partner. The appellants here are the children of John H. Costello, presumptively entitled to the trust estate upon his death and they are seeking the annulment of this transfer of the trust estate to John H. Costello upon the ground that it was fraudulently and wrongfully made, and an accounting by the trustees for the shares of stock of John H. Costello as the transferee of the trust estate, as already stated, and the adjudication that they or their value constitute the trust estate.

The referee found as conclusions of law, in substance, that the transfer by the trustees to John .H. Costello of their interest in the firms was lawfully and validly made and subsequent to it the trustees had no interest in said firms or in the shares of stock received by the surviving partners in payment for the assets of the firms, except under the writing of April 29, 1893, or no right to an accounting for them or the proceeds of a sale thereof.

*Arthur C. Wade, Edward C. Randall* and *Charles B. Sears* for appellants. The contract of sale of the trust estate made by the trustees to John H. Costello April 29, 1893, was a fraud upon the rights of these infants. (*Fulton* v. *Whitney*, 66 N. Y. 555; *Hooley* v. *Gieve*, 9 Daly, 104; 82 N. Y. 625; *Preston* v. *Fitch*, 137 N. Y. 41; *Russell* v. *McCall*, 141 N. Y. 437; *King* v. *Leighton*, 100 N. Y. 392; *Bauchle* v. *Smyle*, 104 App. Div. 415; *Davoue* v. *Fanning*, 2 Johns. Ch. 252.) The plaintiff and the defendants John H. Costello, Jr., and Thomas Costello are entitled to the judgment of this court compelling the trustees to make good this trust estate. (*Mills* v. *Hoffman*, 26 Hun, 598; *Cunningham's Appeal*, 57 Penn. St. 481; *Wright* v. *Bank of Metropolis*, 110 N. Y. 237.)

*John D. Kernan* for Alfred Costello, respondent. There was no fraud in the sale of the trust interest in the

partnership to John H. Costello on April 29, 1893. The trustees realized upon the trust property in the only practical way open to them, and the sale resulted largely to the benefit of the infants. The trustees had no power to speculate in the leather company stock at the expense of the trust. (*King* v. *Talbot*, 40 N. Y. 76; *Adair* v. *Brimmer*, 74 N. Y. 539; *Matter of Hall*, 48 App. Div. 488; 164 N. Y. 196; *Mattocks* v. *Moulton*, 84 Me. 545; *Matter of Dickinson*, 152 Mass. 184; *Kimball* v. *Redding*, 31 N. H. 352; *White* v. *Sherman*, 168 Ill. 589; *Simmons* v. *Oliver*, 74 Wis. 683; *Hemphill's Appeal*, 18 Penn. St. 303; *Barker's Estate*, 159 Penn. St. 518; *Hart's Estate*, 203 Penn. St. 480.) The trustees did not either in fact or law take the leather company stock in exchange for the trust interest in the partnerships. The agreement of sale to John H. Costello was delivered and became binding on April 29, 1893. Moreover, even if the trustees did become entitled to an undivided interest in the stock received by the partnership, it was their duty to dispose of it, and the sale to John H. Costello was justified. (*Field* v. *Schieffelin*, 7 Johns. Ch. 150; *Tuttle* v. *Heavy*, 59 Barb. 334; *Chapman* v. *Tibbits*, 33 N. Y. 289; *Cabble* v. *Cabble*, 111 App. Div. 426.) After the transfer of the trust interests in the partnerships by the executors to trustees, pursuant to the surrogate's decree of July 29, 1892, the said interest became vested exclusively in the trustees. John H. Costello was not, either as executor or surviving partner, prevented from becoming a purchaser thereof. (*Cline* v. *Sherman*, 144 N. Y. 601; *Matter of Perkins*, 75 Hun, 129; 145 N. Y. 599; *Kager* v. *Brenneman*, 47 App. Div. 63; *Matter of Denton*, 103 N. Y. 607; *Brown* v. *Wheeler*, 53 App. Div. 6.)

*John D. Kernan* and *William P. Quinn* for United States Trust Company, as executor of Patrick C. Costello, deceased, respondent. Trustees who act in good faith under the advice of counsel under difficult condi-

tions affecting their duty are always protected by the court, if possible. (*O'Conner* v. *Gifford*, 117 N. Y. 275; *Denton* v. *Sanford*, 103 N. Y. 610; *Matter of Ball*, 55 App. Div. 284; *Matter of Joost*, 50 Misc. Rep. 78; *Geidlandt's Estate*, 132 Penn. St. 479; *Matter of Johnson*, 57 App. Div. 494.)

Collin, J. The judgment entered upon the report of the referee was affirmed at the Appellate Division by a divided court. Because of this absence of unanimity, we are constrained to determine from a study of the record whether or not any finding of fact is entirely devoid of support in the evidence, or any proposed finding of the appellants, sustained by uncontradicted evidence, would have required a legal conclusion favorable to them, if found additionally to the existing findings. (*People ex rel. Town of Colesville* v. *D. & H. Co.*, 177 N. Y. 337; *Arnot* v. *Union Salt Co.*, 186 N. Y. 501.) The evidence answers each inquiry in the negative and for us the facts are conclusively established as found. (*Hawkins* v. *Mapes-Reeve Const. Co.*, 178 N. Y. 236.)

The learned referee, in finding that the surviving partners and trustees and John H. Costello in making the transfer to the latter, in selling to the United States Leather Company and in crediting John H. Costello with the interest of the trust estate in the assets of the firms, acted in good faith and without any intention to defraud or injure the beneficiaries of the trust, found in effect that positive or actual fraud, to which the intention to defraud and deception are essential (*Lefler* v. *Field*, 52 N. Y. 621), did not enter into or invalidate the transaction.

The transaction, free from actual fraud as it was, may, nevertheless, have been unlawful and invalid because it was violative of a legal or equitable duty of the trustees. The appellants were not bound to show, in order to become entitled to the relief they asked, that it was iniquitously conceived and executed. If the findings established that

the trustees, in making the transfer to John H., acted in contravention of principles which the law charged them to observe, and to the injury of the appellants, they were guilty of constructive fraud, as a necessary consequence, regardless of their motive or intention. Constructive fraud, although a breach of a duty, may be consistent with innocence. The purpose to defraud need not enter into it because the law regards the act which gives it rise as fraudulent *per se*. Of such class of acts is the dealing by trustees for their own benefit in matters to which their trust relates, or the gift by an insolvent debtor of his property.

It appears from the findings that the trust estate, as devised, consisted of a twelve and one-half per cent share or part of the interest of the testator as a partner in the partnership property. This interest, as property, was the right to his share as fixed by the agreement of the partners, of any surplus that might remain after the firm debts were paid and the rights of the partners, as between themselves, were adjusted, and the incidental right to procure the share through an accounting or other lawful remedy. The death of the testator dissolved the firms and the interest passed to his executors. The title to the assets or property interests of the firms was thereafter in the surviving partners as legal owners and not as trustees in the strict sense of that term although the law imposed upon them certain obligations of a fiduciary nature. The title to partnership property is not in the individual members of the firm, so that either may assign or transfer to another an undivided share in any specific articles, but it is in the firm as an entirety subject to the right of the partners to have it applied to the payment of the debts of the firm and the equities of the partners, and surviving partners succeed to the exclusive possession and control of the assets and the right within the limits of good faith, of disposing of the assets and closing the partnership affairs. (*Williams* v. *Whedon,* 109

N. Y. 333; *Russell* v. *McCall*, 141 N. Y. 437; *Morrison* v. *Austin State Bank*, 213 Ill. 472.)

The testamentary provision for the continuance of the trust estate in the partnership business after testator's death did not create new firms or constrict the title or rights of the surviving partners. It permitted the surviving partners as such to continue the business for the benefit of the estate and themselves, using the capital and share of the deceased partner therein until the trustees thought fit to extract it and made it liable for the debts meanwhile contracted as well as those existing at testator's death. The property which the trustees transferred to John H. Costello was the right to have delivered by the surviving partners the twelve and one-half per cent of the surplus remaining after the firm debts existing April 29, 1893, were paid and the equities then existing between the surviving partners and the trustees were adjusted. No rule of partnership law forbade the transfer. (*Stewart* v. *Robinson,* 115 N. Y. 328; *Menagh* v. *Whitwell*, 52 N. Y. 146.)

When Alfred Costello, Patrick C. Costello and John H. Costello as surviving partners decided to sell to the Leather Company the assets of the firms (with certain insignificant reservations), two methods of realizing and securing to the trustees the value of the trust interest in the entire partnership assets would seem to have been available to Alfred Costello and Patrick C. Costello as trustees. Their duties and responsibilities as surviving partners and as trustees were as distinct and different as if they had been different individuals. The one method was to sell the interest; the other to passively await the closing and adjustment of the partnership affairs and accounts, the disposition of the firm assets essential to the accomplishment of that result, and the proper distribution of the surplus between the surviving partners and the trustees. They in adopting either method were not arbitrarily and inflexibly inhibited by law or rules of equity

from accepting shares of the capital stock of the Leather Company, as the respondents assert and argue. It is true that the range of legal securities for the investment of trust funds is too contracted to have included them under the conditions than existing. The statutory provision and the rules of equity characterizing the securities in which trust funds may be invested were adopted in the light of experience and we do not intend to weaken them or increase their elasticity. They are not, however, absolutely exclusive, arbitrary and inflexible and must yield to the rule of necessity or safety. A more fundamental and broader principle, superseding in emergencies or justifying conditions the specialized rule, is that trustees are bound in the management of all the matters of the trust to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent men of discretion and intelligence in like matters employ in their own affairs. The law does not hold a trustee, acting in accord with such rule, responsible for errors in judgment. (*Matter of Denton* v. *Stanford,* 103 N. Y. 607; *Ormiston* v. *Olcott,* 84 N. Y. 339; *Litchfield* v. *White,* 7 N. Y. 438.) In the present case, in which there was not the voluntary investment of trust funds with the view merely of placing them at interest, but the compulsory conversion or collection of the trustees' interest in the firm assets, if the application of the above-stated rule would have guided the trustees to a decision and action necessitating the acceptance by them of shares of the stock, they would have been immune from liability on account of it. The trustees chose, however, the method of selling the interest to John H. Costello as and upon the terms stated and it remains to determine whether or not they thereby acted illegally or failed, under the facts as found, to conform to the rule defining their duties.

No principle of law forbade the sale by the trustees to the life beneficiary. (*Albany Exchange Savings Bank* v. *Brass,* 59 App. Div. 370; affirmed, 171 N. Y. 693;

*Franklin* v. *Osgood,* 14 Johns. 527.) The findings are
to the clear effect that they in making it were not deal-
ing with the trust estate for their direct or indirect bene-
fit or advantage. The question whether or not the trus-
tees were culpably negligent should be determined with
reference to the situation at the time the sale to John H.
was made, and not in the light of such subsequent events
as could not through compliance with their duty have
been anticipated. A wisdom developed after an event
and having it and its consequences as a source is a stand-
ard no man should be judged by.

It appears from the findings that on and prior to April
29, 1893, the surviving partners and the trustees knew
substantially the number of the shares of the stock of the
Leather Company the former were to receive upon the
sale of the partnership assets to it, the aggregate amount
of the partnership debts and that the par value of twelve
and one-half per cent of the surplus shares would exceed
very greatly the sum of $174,708.26. If the trustees
legally ought to have known, were obligated to know,
that such twelve and one-half per cent would yield to the
trust estate a sum substantially greater than $174,708.26,
they were, in accepting the latter as the consideration
of the sale of their interest to John H., guilty of action-
able negligence and a fraudulent breach of trust. Obvi-
ously, it is immaterial, in considering the sale to John
H., whether the partnership assets at the time it was
consummated consisted of the plant and property sold by
the surviving partners to the Leather Company or the
shares of stock received by them and the reserved assets.
The liability of the trustees may be based as justly and
firmly upon their knowledge that the shares were to
become partnership assets as that they had become such.

The essential and controlling features of the situation
existing when the sale to John H. was made were: The
Leather Company was organized under the laws of the
state of New Jersey to complete a movement or promo-

tion inaugurated some time prior to January 25, 1893, to consolidate the tanneries of all those who could be induced to enter into the consolidation. It did consolidate over seventy per cent of the tanning interests in the United States. The authorized capital stock was $128,000,000 of preferred eight per cent cumulative and the same amount of common. The surviving partners of the Costello firms, though not promoters, were among the original members of and helped to organize it. All the plants and properties conveyed to it under the organic scheme were paid for in its preferred stock under a purely arbitrary method of valuation unrelated to their real value and formulated for the purpose of distributing upon a common basis the preferred stock so far as it was applied to the purchase of property. With each share of preferred stock a share of common stock was issued as a bonus, though nominally for good will wholly unappraised. The surviving partners and the trustees knew on and prior to April 29, 1893, that the valuation of the plants and properties to be acquired by the corporation under the scheme was not to ascertain their actual value, but the amounts or approximately the amounts of stock which it was to issue in payment to their respective proprietors and that the par value of the stock largely exceeded the fair cash value of the plants and properties, although they during the process of liquidating the affairs of the firms carried the shares on the books of the firms at their par value and as the property of the surviving partners and the trustees, except the trustees were not credited, as were the surviving partners, with a share of the so-called surplus profits arising from the sale, that is, with the difference in the value of those properties before the sale as carried on the books and the par value of the stock received upon the sale. Such, however, was a bookkeeping act only and the parties did not thereby state or intend to state the value or the ownership of the stock. In the course of time the fact devel-

oped that the selling value of twelve and one-half per cent of the surplus stock exceeded $174,708.26 in an amount not found. The surviving partners and the trustees believed at the time of the sale that the competitive operation of the Leather Company would imperil the assets of the firms. They were advised by their counsel and believed that there was danger that neither the preferred nor the common stock was fully paid under the laws of the state of New Jersey and free from a contingent liability on the part of the holder to creditors of the Leather Company. Manifestly the Leather Company was a creation of a novel character, the future of which was highly problematic, the stock of which had and must continue to have until it had achieved success and stability, if ever it did, a speculative, uncertain and dubious value.

The trustees and John H. Costello arrived at $174,708.26 as the value of and the sum the latter should pay for the former's interest in the partnership assets through the valuation of the interest upon the basis of the book accounts, as kept for years by the firms. It was the aggregate of the book credits or balances of the trustees as they appeared on April 29, 1893, and was the valuation of the interest as fixed by a decree of July 29, 1892, of the Surrogate's Court. Neither the executors nor the trustees had at any time appraised the interest independently of the books of the firms, but the valuation of $174,708.26 was fair and reasonable, and the trustees did not anticipate that the value of the twelve and one-half per cent of the surplus would exceed that sum. John H. was solvent at the time of the sale to him, and the payment of his promissory note for the entire purchase price was secured, not alone by twelve and one-half per cent of the surplus, but by twenty-five per cent thereof. The note was paid to the trustees, who upon the delivery of the trust estate to a successor were discharged. All men of honesty, prudence and enlightenment do not think alike, and it assuredly would be beyond fair dealing or justice to

adjudge that the trustees failed to exercise those characteristics in making the sale to John H., and were, consequently, guilty of culpable and fraudulent negligence. We think the conclusions of law are cogently supported by the findings of fact.

The conclusion we have reached makes unnecessary a discussion of the other positions taken by the parties.

The judgment should be affirmed, with costs to the respondents.

CULLEN, Ch. J., GRAY, WERNER, HISCOCK, CUDDEBACK and MILLER, JJ., concur.

Judgment affirmed.