In the Matter of the Estate of ERNEST B. MULLER, Deceased.

Surrogate's Court, New York County, May 16, 1935.

*Seligsberg & Lewis* [*Walter N. Seligsberg* of counsel]; for the executors and trustees.

*Edward W. McDonald,* special guardian.

FOLEY, S. In this proceeding the executors petition the court for authority to depart from the class of legal investments and to invest the funds within the trusts in common stocks. The terms of the will permit the retention of securities left by the testator, but provide no grant of power to make new investments in securities other than those permitted by the statutes. (Dec. Est. Law, § 111; Pers. Prop. Law, § 21.) The trusts under the will are created

by the residuary clause. The aggregate of the funds is approximately $400,000. Two-thirds are placed in trust for the benefit of the widow for life. The remaining one-third is for the benefit of the son. The other terms of the trusts need not be stated except it is important to stress the fact that the rights of an infant require protection since the infant granddaughter of the testator is a contingent remainderman.

The petitioners assert that an emergency has arisen which warrants the grant of this application by the court and justifies the exercise of power in the emergency to authorize the departure from the statutory class of investments They assert (1) that inflation of the national currency is reasonably probable; (2) that only so-called " equity investments," that is common stocks or commodities, survive inflation; and (3) that the essential requisites for safeguarding investments during an inflationary period are elasticity and power in the fiduciary to act quickly. Specifically they ask for permission to invest thirty-five per cent of the fund in common stocks.

They disclaim any purpose to increase the income for the benefit of the life tenants. They argue that in the event of inflation, legal investments comprising government, State and municipal bonds, mortgages on real estate and corporate bonds, which in normal times are regarded as safe become unsafe, and that representing debts rather than equities a shrinkage in their intrinsic value is inevitable. Comparison is made with the post-war economic conditions in Germany and France whereby the intrinsic values of common stocks were preserved despite the inflation of currency and the devaluation of the mark and the franc. It is asserted that the experience of those countries proves that even the value of government bonds was greatly impaired in the case of France or entirely destroyed in the case of Germany. The testimony of economic experts has been submitted to the surrogate by the petitioners in support of their contentions.

One of these experts testified with particularity to the results of inflation in Germany. He pointed out convincingly that the great mass of persons in the trusting and thrifty class were impoverished by the loss of their investments, their savings and their life insurance policies; that savings banks deposits were destroyed and that life insurance companies of that country were rendered insolvent by the governmental issuance of paper money without limit. He demonstrated that the vigilant and shrewd possessor of property who shifted his investments into common stocks of well-managed corporations, or into real estate, or into commodities, not only protected the value of his original holdings,

but increased his resources by the enhancement of values. He showed that the owner of the title to real estate profited whereas the mortgagee suffered a serious reduction in the loan upon the very realty which his money had been used to finance. In Germany despite the increase in the value of the realty, the value of the mortgages was reduced by legislation to fifteen to twenty-five per cent of the original loan. The observations and conclusions of these witnesses are extremely illuminating, but not controlling here, in view of the law of our State.

The application is denied. In certain extraordinary situations, in the case of wasting assets or to avoid a complete destruction of the trust, the courts, in the exercise of their equity powers, have authorized departure from the terms of a will limiting the class of investments, and in certain cases even permitted a sale where the will directed the retention of trust assets. The latter situation was presented to me in *Matter of Pulitzer* (139 Misc. 575; affd., 237 App. Div. 808). There the will prohibited the sale of certain assets of a corporation, a large part of the stock of which was owned by the estate. The financial condition of the company was greatly impaired by losses in operation. The surrogate found that a crisis existed which created a duty in the trustees to act for the protection of the beneficiaries of the trust and made imperative the sale of these assets. General authority to act in the emergency was granted by the court to the trustees. In my decision I reviewed the cases in which other courts had exercised like powers and specifically discussed the precedents in our State in *Mertz* v. *Guaranty Trust Co.* (247 N. Y. 137, 144); *Toronto Gen. Trusts Co.* v. *C., B. & Q. R. R. Co.* (64 Hun, 1; affd., on opinion below, 138 N. Y. 657); *Costello* v. *Costello* (209 id. 252) and *Matter of Pressprich* (124 Misc. 15).

Cases have also arisen in the present depression where directions in a will for investment in an exclusively limited class of securities, for example guaranteed mortgages or mortgage certificates, justified a departure from the terms of the will because of the unavailability of sound investments of the specified class. Nevertheless, the new investment authorized by the court was restricted to one within the class of legal investments. In certain cases where assets left by the decedent were converted by corporate reorganization or changed from a partnership interest to corporate stock by the sale of the partnership assets, the new investments were permitted to be made and their actual retention without prior judicial authority was held not to be a ground of surcharge against the fiduciary. (*Costello* v. *Costello*, 209 N. Y. 252; *Mertz* v. *Guaranty Trust Co.*, 247 id. 137, 144.)

Research, however, on the part of counsel for the petitioners and by the surrogate has revealed no case where a *new* investment outside of the class of legal investments has been authorized or countenanced by our courts. The situation in the estate in the present proceeding is no different from that in thousands of other trusts, testamentary or *inter vivos*. Any change in policy is of the utmost gravity because of the billions of dollars held within the class of legal investments not only by trustees but by guardians of infants and by committees of incompetents.

A definite program of immediate or impending inflation or the unrestricted issuance of fiat money has been denied by the responsible government officials of this country. The question, however, is not wholly within executive control, for Congress might embark upon a program of inflation despite executive disapproval. It is futile to indulge in the possibilities or probabilities of such a course. The question here is inherently one of judicial power. Should the courts be permitted to vary and amend the statutory class of investments by a process of judicial discretion upon the urging of executors, trustees or those interested in estates? Assume that the terms of the will do not authorize any departure in the making of new investments. The hope of a trustee of a rise in common stocks, as prophesied here by counsel for the petitioners, might move a court to act if power existed in the emergency. On the other hand, in other periods, for example in the era of wild speculation and subsequent decline in value of common stock between 1928 and 1933, such authorization would have led to the great impairment or destruction of trust estates. If investments in common stocks may be permitted in disregard of the law, trustees in other estates might well urge the grant of authority to invest in commodities, including wheat, cotton, coal or metals. Other trustees might find support for the rise in real estate values in inflationary periods in other countries, to urge the court to approve an investment in realty equities. Such a system would inevitably lead to instability of investments depending upon the speculative whims of trustees and the individual mental disposition of the court to which the application is made. To vest this jurisdiction in the courts and to permit departures from the class of legal investments would be extremely unwise.

*Matter of Tollemache* (L. R. [1903] 1 Ch. 457; affd., [1903] Id. 955), cited by counsel for the petitioners, instead of a precedent to support their contentions, sustains the conclusions that I have reached. Judge KEKEWICH there reviewed the English authorities, pointing to the observation of Lord Justice ROMER that the court may " do something not authorized by the trust " in " cases of emergency,

cases not foreseen or provided for by the author of the trust, where the circumstances require that something should be done." But the court there refused to sanction a departure from the class of legal investments. The question of power there was held to be legislative rather than judicial.

The present system for the delimitation of the class of investments of trust assets by statute is part of the public policy of this State. Judge COLLIN, writing for the Court of Appeals in *Costello* v. *Costello* (209 N. Y. 252), at page 261 said: " The statutory provision and the rules of equity characterizing the securities in which trust funds may be invested were adopted in the light of experience and we do not intend to weaken them or increase their elasticity."

Despite the broad jurisdiction over trusts now possessed by the Surrogate's Court, which is as comprehensive as that possessed by the former chancellor, I know of no power in any court to disregard the command of the Legislature and to declare an investment to be lawful which the lawgivers have declared to be unlawful. (*Cruger* v. *Jones;* 18 Barb. 467.) If there are considerations which justify the change of the class of legal investments they should be addressed to the Legislature.

Surrogate SLATER of Westchester county has recently urged the creation of a commission to study the revision of this class of investments (" Testamentary Trust Funds; Should State Compel Safer Investment? " New York State Bar Association Bulletin, March, 1934). The Legislature has not acted as yet in the authorization of a commission for this important purpose. Certainly the present situation in which many unfortunate beneficiaries of estates find themselves because of investments in guaranteed mortgage certificates and mortgage participations should be corrected in the future by stronger statutory limitations or complete prohibition of these types of investment. The statutory changes when made should be clear and unambiguous. They should apply in broad scope to all trusts and to the estates of infants and incompetents. Only by such means may uniformity and stability be attained, beneficiaries protected and accurate rules for the guidance of fiduciaries established.

Submit decree denying the application and settling the accounts.