In the Matter of the Estate of MARGARET R. A. BUNKER, Deceased.

Surrogate's Court, New York County, December 1, 1944.

*James D. Ouchterloney* and *Harry A. Leigh* for Bank of the Manhattan Company, petitioner.

*Enos Throop Geer* and *E. W. Poindexter* for Union Trust Company of the District of Columbia as administrator *c. t. a.* of Mary A. Meyn and another, respondents.

FOLEY, S. This proceeding involves the settlement of the account of the ancillary executor of the deceased legal life tenant for the latter's acts and transactions in his trust capacity for the benefit of the two vested remaindermen. The life tenant was the husband of the decedent. Both remaindermen died prior to his death and the objections were filed to the account by the the legal representatives of the estates of such remaindermen. The objectants originally sought to enforce a surcharge against the life tenant's estate under a contention that he was confined to investments within the legal class of securities and that by his purchase of common and preferred stocks he and his estate became liable for the resulting losses.

In a prior decision in this proceeding I held that the determination of whether he was limited to the class of legal investments was unnecessary. I held further that the objectants were estopped to assert a liability because of the active participation of the remaindermen in the investment of the funds of the estate in common and preferred stocks. (*Matter of Bunker*, 183 Misc. 523.) Both of the remaindermen were executors. The life tenant was also an executor. The executorial administration covered a period of about seven years and was the subject of an account which was judicially settled by decree made in 1913. I also held that the objectants were estopped from asserting a liability against the life tenant or his estate not only by the active participation and consent of the remaindermen, but further by reason of the acquiescence of the remaindermen and of the legal representatives of their estates over a period of thirty-six years.

The Surrogate in that decision directed a further hearing upon the remaining issues as to whether the estate of the deceased life tenant was chargeable with negligence or lack of prudence in making speculative investments in violation of the rule for the conduct of fiduciaries laid down in *King* v. *Talbot* (40 N. Y. 76). The rule is therein stated that " * * * there appertains to the relation of trustee and *cestui que trust*, a duty to be faithful, to be diligent, to be prudent in an adminis-

tration entrusted to the former, in confidence in his fidelity, diligence and prudence ''; and '' * * * the just and true rule is, that the trustee is bound to employ such diligence and such prudence in the care and management, as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs.''

The objectants contend for a surcharge upon the ground that the life tenant made seventeen investments in common and preferred stocks. One of them was bought in 1917. The others were purchased in the period between 1926 and 1931. They assert that these investments were speculative and hazardous and were made in violation of the rule of prudence and diligence above stated.

The Surrogate finds upon the evidence that none of the investments complained of was speculative and that in their purchase the life tenant acted in good faith and employed vigilance, diligence and prudence. I also find that he did not engage in a system of speculative trading activities. The evidence satisfactorily shows that he was not guilty of any negligence.

The testatrix died on August 1, 1906. The life tenant had conducted his own export business over a long period of years. In 1913 he took over the exclusive management of the fund under the decree in the executors' accounting. At that time he was about fifty-five years old. He died at the age of eighty-four. It is an undisputed fact that he retained his keeness and business judgment up to the time of his death.

The attorneys for the executor of his estate were faced with the difficulty upon the trial of meeting sweeping charges of misconduct after the life tenant had passed away. They were required to reconstruct the circumstances attending the current exercise of his judgment in making the investments. That difficulty has been satisfactorily solved, however, by the testimony of Mr. Vivash who had acted as manager, cashier and bookkeeper for Mr. Bunker in the conduct of his personal business for over forty years. He also kept the accounts and assisted in the making of investments within the fund involved in this proceeding. Although he is ninety-two years of age he exhibited an excellent memory and was a convincing witness. I accept all of his testimony as true. He testified that Mr. Bunker, before buying or selling any of the investments, sought the advice of experienced and high officials of a bank in this city. He consulted the partners and subordinates of two firms of bankers and brokers who were members of the New York Stock Exchange. He continuously studied recognized financial peri-

odicals, including Moody's Manual, as to the trend of investments and the financial statements of the companies in which securities were about to be bought and sold by him.

This demonstrated proof of current vigilance and of prudence and reasonable care, and of the absence of any negligence is sufficient to justify the denial of any surcharge against the estate of Mr. Bunker.

The securities purchased were those of railroads, public utilities, a steel corporation and of other enterprises currently traded in upon recognized stock exchanges. No one of them can be singled out as speculative or hazardous.

Beside the group of seventeen securities attacked, objection was also filed to the investment in two other securities. They were the preferred stock of the Baltimore & Ohio Railroad Company and the common stock of the National Biscuit Company. The objection to them was withdrawn with a consequent concession of prudence. The withdrawal is of special significance against the objectants because these securities cannot be differentiated in character from the remaining seventeen securities which remained as the objects of attack.

The tests of the conduct of a fiduciary were restated in the leading case of *Matter of Clark* (257 N. Y. 132, 136, 137). They are there set forth as follows: " In determining whether the acts of a trustee have been prudent, within the meaning of the rule, we must ' look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place ' (\* \* \* *Purdy* v. *Lynch*, 145 N. Y. 462, 475); for it is an obvious truth that ' a wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by ' (\* \* \* *Costello* v. *Costello, supra*, at p. 262 [209 N. Y. 252]); and it is impossible to say that trustees are wanting in sound discretion ' simply because their judgment turned out wrong ' (\* \* \* *Green* v. *Crapo*, 181 Mass. 55, 58). \* \* \* Furthermore, the distinction between negligence and mere error of judgment must be borne in mind. ' Trustees acting honestly, with ordinary prudence and within the limits of their trust, are not liable for mere errors of judgment ' (\* \* \* *Matter of Chapman, supra*, at p. 776 [(1896) 2 Ch. 763]); a trustee should not be held liable ' for unfortunate results which he could not be expected to foresee and was powerless to prevent ' (*Ormiston* v. *Olcott*, 84 N. Y. 339, at p. 347).''

When these tests are applied to the conduct of Mr. Bunker they justify a complete exoneration of any surcharge. The

subsequent decline in value of the investments is attributable to the economic conditions which accompanied the panic of 1929 and the subsequent depression. The same hardships have resulted to prudent men and women in the wide-spread shrinkage of values of securities bought by them. For these subsequent events or for errors of judgment, or for lack of prophetic vision neither the life tenant nor his estate can be held liable. (*Matter of Clark, supra; Purdy* v. *Lynch, supra; Costello* v. *Costello, supra; Matter of Kent,* 146 Misc. 155, affd. 246 App. Div. 604, leave to appeal denied 270 N. Y. 675.)

Other recent decisions which have dealt with the rule of current vigilance where a surcharge was denied are *Matter of Delamater* (266 App. Div. 200, affd. 292 N. Y. 518), *Chemical Bank & Trust Co.* v. *Ott* (274 N. Y. 572, modfg. 248 App. Div. 406) and *Matter of Kent (supra).*

All of the objections, which have not been withdrawn by the objectants or otherwise disposed of by the Surrogate, are overruled.

Submit decree on notice settling the account in accordance with the decisions of the Surrogate.