**SALOMON BROS. & HUTZLER v. PEDRICK.**

United States District Court
S. D. New York.
May 7, 1952.

Cleary, Gottlieb, Friendly & Hamilton, New York City, for plaintiff.

Myles J. Lane, U. S. Atty., New York City, for defendant.

NOONAN, District Judge.

In this case, the plaintiff has moved for summary judgment and the defendant has made a cross-motion for like relief.

The question is whether the plaintiff partnership became subject to Federal stamp taxes with respect to alleged transfers of its entire holdings of stocks and bonds on three different occasions:

(a) Upon the voluntary withdrawal on January 1, 1945, of one general partner;

(b) On the death on April 19, 1945, of another general partner; and

(c) Upon the admission to the partnership on January 1, 1947, of two new general partners.

The Commissioner ruled that each change in the firm membership, whether or not there was a dissolution of the partnership, and formation of a new one, effected a change in ownership of the securities held by the partnership and a taxable transfer of legal title thereto. The taxes in controversy were assessed as a result of this ruling.

The facts have been stipulated between the parties and it is agreed that no further testimony will be offered.

On and prior to January 1, 1945, plaintiff was a limited partnership and one of the partners was a Mr. Lloyd S. Miller. On that day, Mr. Miller withdrew from the partnership and subsequently withdrew the sum of $29,222.03, being his share of the partnership capital and representing about 6/10ths of 1% of the firm capital. On that date the partnership owned shares of various stocks and also was the owner of various bonds.

On or about April 19, 1945, another of the general partners of the plaintiff, Mr. Henry L. Rosenfeld, died and subsequently his executors withdrew from the partnership in cash, the sum of $146,946.90 being his share of the capital of the firm and representing about 2½% of the firm capital. On that date, the plaintiff owned 27,028 shares of various stocks and $6,969,600 principal amount of various bonds.

On January 1, 1947, there were admitted as general partners of the plaintiff a Mr. Leo G. Shaw and Mr. Charles J. Simon. Mr. Shaw contributed $25,000 and Mr. Simon $5,000 to the capital of the partnership; the total of these two constributions amounted to less than ½ of 1% of the firm capital. Immediately after these contributions the total capital of the firm amounted to $5,815,000. On that day, January 1, 1947, the plaintiff owned 9,349 shares of various stocks and $9,324,000 face amount of various bonds.

It is stipulated that if the plaintiff had transferred all of its stocks and bonds which it owned on the aforesaid dates, namely January 1, 1945, April 19, 1945 and January 1, 1947, it would have incurred transfer stamp taxes in the amount of $5,526.10 (on January 1, 1945), $4,472.34 (on April 19, 1945), $4,981.70 (on January 1, 1947) or a total of $14,980.14, the amount involved in this suit.

On or about June 7, 1948, demand was made of the plaintiff by the Collector of Internal Revenue for the payment of documentary stamp taxes in the said amount of $14,980.14 which sum was paid by the plaintiff on or about June 9, 1948.

On or about September 28, 1949, the plaintiff filed with the Collector of Internal Revenue a claim for refund of the said stamp taxes which was disallowed and rejected by the Commissioner of Internal Revenue on March 14, 1949.

Thereafter plaintiff instituted this action to recover the stamp taxes paid.

The plaintiff's position is that on the withdrawal of one general partner, the death of another general partner and the admission of the two other general partners, referred to above, the partnership continued as such and was not terminated or dissolved. It is argued that in each case the firm continued to hold and own all of the stocks and bonds it then carried, and that there was no transfer of legal or record title to such securities to anyone and the beneficial ownership therein remained with the continuing firm.

Thus the plaintiff urges, there being no transfer of either legal or beneficial ownership, no stamp taxes were due.

The defendant's position is based on an office ruling of the Commissioner of Internal Revenue, M.T. 20, C.B. 1944, page 649.[1]

This ruling was not applied to transactions prior to May 25, 1944, the date of its publication, M.T. 22 1945 C.B. 452. Further M.T. 20 was never made a part of the Treasury Regulations.

In 1947, by Public Law 387, effective August 8, 1947, the Congress added a proviso to Section 1802(b)[2] of the Internal Revenue Code reading as follows:

"Provided further, That upon any transfer of an interest in a partnership owning shares or certificates of stock, the tax shall be limited to an amount equal to that percentage of a tax computed on the transfer of all of such shares or certificates of stock owned by the partnership as the interest transferred bears to the total interests in the partnership of all the partners".

A similar proviso was added to Section 3481 of the Internal Revenue Code with respect to the stamp tax on the transfer of bonds. These amendments were not retroactive. The defendant urges that reference to the Committee Reports which accompanied the bill (H.R. 3613) to amend Secs. 1802(b) and 3481(a) in the manner just indicated above demonstrates that Congress accepted the construction of those sections as interpreted in M.T. 20, supra. As indicative of this, a reference is made in the defendant's brief to the report of the House Committee on Ways and Means, No. 969, dated July 17, 1947, which reads as follows:

"With respect to partnerships owning shares or certificates of stock, or bonds, the bill would limit the tax applicable upon the transfer of partnership interests, when a change in the personnel of the partnership occurs, to an amount proportionate to the capital interest transferred. Under present law, in such cases, the tax is based upon the full number of shares, certificates or bonds, as the case may be, owned by the partnership, even though the entire capital is not involved in the transfer."

1. The ruling reads in part:
   "Irrespective of whether the admission of a new partner effects a dissolution of the partnership and the formation of a new partnership, it is believed that a partnership, either at common law or under the Uniform Limited Partnership Act as adopted in a number of jurisdictions, is not a juristic entity but an association of individuals holding the partnership's property in 'tenancy in partnership'—a form of co-ownership. See sections 24, 25, Uniform Limited Partnership Act, and Commissioner's note to subdivision (1) thereunder, 7 U.L.A. 31; Rossmoore v. Commissioner, 2 Cir., 1935, 76 F.2d 520, Ct.D. 1009, C.B. XIV-2, 278 (1935); Helvering v. Smith, 2 Cir., 1937, 90 F.2d 590, Ct.D. 1297, C.B. 1938-1, 277. It follows that the transfer of the interests of such joint owners effects a change in ownership of the partnership's securities which constitutes an incident to which the stock transfer tax and bond transfer tax apply. See Regulations 71 (1941), sections 113.33(f) and 113.63.
   "It is held, therefore, that the admission of a new partner into the M. Partnership effected a change in the ownership of the securities carried on the partnership's books and a transfer of legal title thereto which is subject to stamp tax under sections 1802 (b) and 3481 of the Internal Revenue Code, as amended."

2. Sec. 1802(b) of the Internal Revenue Code—"(b) Sales and transfers. On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), on each $100 of par or face value or fraction thereof of the certificates of such corporation or other organization (or of the shares where no certificates were issued) 5 cents and where such shares or certificates are without par or face value, the tax shall be 5 cents, on the transfer or sale or agreement to sell on each share (corporate share, or investment trust or other organization share, as the case may be): * * *."

It is argued that the practice of the Bureau and the Miscellaneous Tax Unit is to be given great weight by the Courts. Conceding the validity of this argument by the defendant, it is equally true that such reference to the "present law" in the Committee Reports is not final nor dispositive. A mere reference to what the "law" presently is, in a Committee Report, is not necessarily accurate nor always free from error.

An administrative interpretation of a statute which was erroneous and which Congress wanted to change when it came to its attention cannot preclude the Courts from exercising their function of construing the statute. Pembroke Realty & Securities Corp. v. Commissioner of Internal Revenue, 2 Cir., 122 F.2d 252, 254.

To summarize the defendant's position, it may be stated thus. For Federal stamp tax purposes, the partnership should be ignored as a unit and the members thereof treated as joint owners or owners-in-common of each partnership asset. On this theory any change in the membership of the partnership gives rise to a transfer of an interest in each security owned and a resultant stamp tax on the entire portfolio. It is significant that despite this contention, the tax is asserted against the partnership and not against the individual partners.

On the other hand, the sum total of the plaintiff's argument is that for stamp tax purposes, the partnership is not ignored, that the continuing partnership makes no transfer of its portfolio securities because of the minor changes in the personnel of the firm and that, under the New York law, partners cannot properly be regarded as the owners of an undivided interest in each firm asset.

The New York Partnership Law, McK. Consol.Laws, c. 39, which generally follows the Uniform Partnership Act, defines the relationship of the members of a New York partnership to the property owned by such partnership.

The New York Partnership Law provides that the assets held by a partnership for its own account are "partnership property", Section 12. The property rights of a partner in specific partnership property are spelled out in Section 51 which reads as follows:

"§ 51. Nature of a partner's right in specific partnership property

"1. A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

"2. The incidents of this tenancy are such that:

"(a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.

"(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property.

"(c) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws.

"(d) On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.

"(e) A partner's right in specific partnership property is not subject to dower, curtesy, or allowances to widows, heirs, or next of kin."

It seems clear to this court that the rights of each individual partner in specific part-

nership assets, referred to in the statute as "tenant in partnership" falls short of what would ordinarily be regarded as individual ownership even of an undivided interest in specific assets.

It also seems abundantly clear that under the New York statute, the individual partner has no fractional right in specific partnership property which he alone can assign. He is incapable of making an individual transfer of a fractional interest in each security held by the firm. Yet it appears that the ruling of the Commissioner here attacked would, to be valid, require recognition of an alleged transfer of this type. The law in New York is settled that a partner is not the owner of a fractional or undivided interest in each partnership asset. Costello v. Costello, 1913, 209. N. Y. 252, 103 N.E. 148; Kraus v. Kraus, 1928, 250 N.Y. 63, 164 N.E. 743.

The defendant's theory that each partner is to be treated for stamp tax purposes as owning an undivided interest in each security held by the partnership is not in accord with the New York Partnership Law and the decisions of the New York Courts dealing with the nature of a partner's property rights.

The plaintiff, in its brief, makes reference at considerable length to decisions in the Federal Courts in income tax cases. These appear to me to be of doubtful value in determining the issues in this case. The stamp taxes here involved and income taxes are different in their very nature. Furthermore, for income tax purposes, a partnership has always been ignored as a taxpayer. It is merely utilized as a source of information and as an income computing unit, with the individual partners liable to taxes on the partnership income as their interest therein may be spelled out by the agreement between such partners. However, even in the income tax cases, the rule now is that when a partner transfers his interest in a partnership, the property he is selling is his partnership interest, and not an undivided fractional interest in the assets held by the same. His "cost basis" is the properly adjusted cost of his interest in the firm, not some part of the cost to the firm of its assets. His date of acquisition is recognized as the date of acquisition of his interest in the firm, and not the various dates on which the firm acquired its assets. His interest in the firm, which is disposed of, is a capital asset even though the property held by the firm includes noncapital assets. Commissioner of Internal Revenue v. Lehman, 2 Cir., 1948, 165 F.2d 383, 7 A.L.R.2d 667, certiorari denied 334 U.S. 819, 68 S.Ct. 1085, 92 L.Ed. 1749; Long v. Commissioner, 5 Cir., 1949, 173 F.2d 471, certiorari denied 338 U.S. 818, 70 S.Ct. 61, 94 L.Ed. 496; U. S. v. Shapiro, 8 Cir., 1949, 178 F.2d 459; Swiren v. Commissioner, 7 Cir., 1950, 183 F.2d 656, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L.Ed. 659.

In the case before us, there was no transfer of securities from one partnership to a successor partnership by reason of the death or retirement of a partner, or the admission of new partners. It seems to me that the theory of M.T. 20 is unsound and inconsistent with the New York Law defining property rights of partners in partnership assets. Many situations occur which clearly spell out the lack of logic in M.T. 20, if it should be consistently applied to all situations falling within its potential scope. Various changes may be made in partnership interests without any changes in firm membership. Continuing partners may increase or reduce their contributions to the firm capital. General partners may become limited partners with a resulting change in their capital contribution. Yet, under the theory of M.T. 20, if followed to its logical conclusion, a taxable transfer of the firm's entire portfolio of stocks and bonds would occur on each day on which there is any change in the proportionate interest of the partners. It is true that the Commissioner has not pushed his ruling to this extent, and has applied it only where changes in firm membership occurred. But even in this situation, it is possible that newly admitted partners may not be required to put up capital. It is also true that a partner may withdraw without being entitled to any capital withdrawal, or that such withdrawal, may occur on a day other than that on which he ceases to be a partner.

■ It is my conclusion that the assessments here complained of were erroneous, and that plaintiff's motion for summary judgment should be granted. Defendant's cross-motion is accordingly denied.

Settle order on notice.