In the Matter of the Accounting of Lawyers Trust Company, as Executor of and Trustee under the Will of Mary A. Delamater, Deceased, Appellant.

Sarah D. Geer et al., Respondents.

First Department, May 21, 1943.

*Adrian P. Burke* of counsel (*Dean, King, Smith & Taylor,* attorneys), for appellant.

*Edmond B. Butler* of counsel (*Raymond D. O'Connell* with him on the brief; *O'Connell & Butler,* attorneys), for the respondent Sarah D. Geer.

*Louis H. Solomon* for respondent Hathorne C. Geer, as general guardian of the property of Lewis D. Geer and Mary C. Geer, infants.

UNTERMYER, J.  The Lawyers Trust Company, to which, for convenience, we will refer as Trustee, appeals from a decree of the Surrogate's Court, New York County, sustaining objections to its account as Trustee of the estate of Mary A. Delamater, surcharging it in the sum of $11,000, disallowing disbursements of $2,916.86, directing it to pay unpaid claims of $259 for services of architects and real estate agents, and reducing the unpaid claim of legal services from $1,000 to $500.

Mary A. Delamater died on October 4, 1934, leaving a will designating Lawyers Trust Company and two daughters, Sarah D. Geer and Ann D. Delamater, executors and trustees.  The two daughters were beneficiaries of the income of the trust established under the will.  The corpus of the trust was left to two infant remaindermen, grandchildren of the testatrix. Letters testamentary were issued on October 13, 1934, and on September 6, 1939, the appellant, together with Sarah D. Geer and Ann D. Delamater, became trustee.

Objections were filed to the account of the Lawyers Trust Company by Sarah D. Geer and Ann D. Delamater, as cotrustees and income beneficiaries and by the general guardian of the infant remaindermen. The objections of Sarah D. Geer and the general guardian are to the effect that the accounting executor acted negligently and imprudently in failing (1) to foreclose the mortgages upon premises 251, 253 and 255 West 123rd Street, immediately upon qualification of the executors, (2) in failing to accept offers to sell after the property had been acquired through foreclosure, and (3) in failing to proceed with the rehabilitation of the premises. The objections filed by Ann D. Delamater related only to unpaid claims for legal and architects' services and to the application of the Lawyers Trust Company for leave to resign.

The estate consisted of three mortgages on 251, 253 and 255 West 123rd Street, a parcel of real property at 704-6-8 Ninth Avenue and $41,896.16 in stocks and bonds of prosperous corporations, and cash. The debts, taxes, funeral and administration expenses amounted, however, to $21,817.40, leaving free liquid assets of about $20,000.

At the time of decedent's death, the three mortgages on the West 123rd Street properties which aggregated $36,650 were in default. The decedent had been accepting four per cent interest. The interest in arrears was $924.45, and tax arrears, interest and penalties aggregated $5,573.44. The buildings were subject to violations of the Multiple Dwelling Law, and all were in poor condition. The mortgages were appraised as of the date of death at $11,000.

The 123rd Street properties are adjacent to a power generating station. They are three adjoining brick buildings, about forty years old, number 251 containing five stories and ten six-room apartments, the other two four stories containing four six-room apartments each. The gross rents of the three buildings amounted to $5,400 per annum. The executors commenced foreclosure of the two mortgages on 253 and 255 West 123rd Street in May, 1936, and 251 West 123rd Street in April, 1937. Title to the three buildings was acquired in February, 1938, by the executors. In September, 1937, 251 West 123rd Street was boarded up and later the remaining two buildings were boarded up.

The Surrogate has held, and we find no reason to differ with his ruling, that the Trustee was not negligent in failing to foreclose the mortgages more promptly than it did. He appears also to have held that the Trustee may not be charged with

improvidence or negligence in failing to accept offers for the sale of the property after it had been acquired by foreclosure. On the principal issue litigated, however, the Surrogate held that it was the duty of the Trustee to have reconditioned these buildings by removing violations and otherwise rendering them habitable. The record establishes, beyond contradiction, that to do this would have cost at least $5,000, which, added to the accumulated real estate taxes of $5,573.44, would have involved an expenditure of at least $10,000, even if we assume that the taxes could have been adjusted for $5,000. For this purpose, the Surrogate held that the accounting Trustee should have liquidated about one half of the corporate securities belonging to the estate. Accordingly, he disallowed the expense incurred in boarding up the premises and the amount paid in 1939 to the City Collector on account of arrears of taxes.

When the Trustee acquired possession of these properties, it found that, apart from the dilapidated condition of the buildings, they contained apartments which were too large to be readily rentable in that section of the city. It was thus confronted with the necessity of deciding whether to reconstruct the buildings by dividing the apartments into smaller units, at a cost variously estimated between $25,000 and $40,000, or merely to rehabilitate the premises by removing the violations and otherwise rendering them habitable at a cost of at least $10,000, or to allow them to remain vacant in the hope that improved conditions might render possible a sale on more favorable terms than were then obtainable. The Trustee has now been held liable because it concluded that the last was the better course, in that it did not imperil so large a part of the liquid assets of the estate, after it was found that the first course could not be followed on account of inability to secure a mortgage sufficient for that purpose.

Two witnesses claiming to be experts in real estate in this area testified at the trial — one for the Trustee, the other for the respondents. These witnesses were in direct contradiction concerning the economic possibilities of the property if the violations were removed and the property rehabilitated. The Surrogate concluded to give credence to the respondents' expert and to reject the testimony of the expert for the Trustee. We would be disposed to conclude otherwise on the present record, but do not find it necessary to determine that question for the reason that it is not decisive of the issue in this case. That issue is not whether in the opinion of the court a different course of action would have produced a more satis-

factory result but whether under the circumstances existing at the time the Trustee acted with such diligence and circumspection as " prudent men of discretion and intelligence in such matters, employ in their own like affairs." (*King* v. *Talbot*, 40 N. Y. 76; *Matter of Clark*, 257 N. Y. 132.) Upon the present record we think it cannot be held that the Trustee was remiss in failing to liquidate one half of the excellent securities in the estate in order to invest the proceeds in so precarious an undertaking.

In September, 1939, the Trustee and the respondent Sarah D. Geer had applied to the Surrogate for instructions concerning these three buildings. In that proceeding the respondent Hathorne C. Geer, as general guardian for the infants, expressed himself in favor of a complete reconstruction of the premises and strongly opposed as unprofitable any plan merely to remove the violations and rehabilitate the properties. Likewise, the respondent Sarah D. Geer, by joining in the petition, appears to have opposed a sale of the property on terms then available and to have favored a complete reconstruction in contrast to a mere rehabilitation of the premises and removal of the violations. It is also significant that the objections filed by the respondent Ann D. Delamater in this proceeding do not charge the Trustee with negligence in the management of these properties.

On that application, there was submitted, in addition to the report of the guardian of the infants, the affidavit of a real estate broker familiar with such property, who opposed as " uneconomic " the mere removal of violations and the restoration of the property to " a lawful operating basis." There was also submitted the opinion of a real estate expert and of a contractor to the same effect. We think that these opinions, together with the opinion of the expert who testified for the Trustee at the trial, warranted the Trustee in refraining from expending upwards of $10,000 in removing the violations and rehabilitating the building when it was found that neither lending institutions nor the Reconstruction Finance Corporation would loan on mortgage the amount necessary to make possible a complete reconstruction of the buildings.

The Surrogate has refused to approve the expenses incurred by the Trustee in connection with the application of September, 1939. These expenses were incurred in manifest good faith and in the belief, reasonably entertained at that time, that a reconstruction of the premises would be possible. We are further of opinion that under all the circumstances the Trustee should

be permitted to resign, but that since it is resigning for its own convenience and that it will be necessary to substitute another trustee it should not receive commissions on paying over the assets of the trust. We deem the sum of $500 allowed by the Surrogate for legal services to the attorneys for the Trustee to be sufficient.

To the extent indicated the decree, so far as appealed from, should be modified, and as so modified affirmed, without costs.

DORE, COHN and CALLAHAN, JJ., concur.

Decree, so far as appealed from, unanimously modified in accordance with opinion, and as so modified affirmed, without costs. Settle order on notice.