Callahan, J.
These are cross appeals from the decree in a contested proceeding for judicial settlement of the trustee’s account.
I. On the ohjectants’ appeal from so much of the decree as overrules certain objections to the account as filed, we find no error and think that the dismissal of such objections was proper.
II. The trustee’s appeal, however, involves other objections sustained by the Surrogate and resulting in surcharges for its action in respect to the Baldwin mortgage and the leasing of the Hotel Albert.
(1) The surcharge of $6,500 on the Baldwin salvage. This resulted from the release of the obligor on a bond of $80,000 secured by mortgage on real property located at 5 East 73rd Street, New York City. In 1930, the trustee sold the property to Baldwin for $135,000, of which the purchaser paid $55,000 in cash and gave back a purchase-money mortgage for the balance of the price. In 1938, Baldwin defaulted in payment of interest and taxes, and offered to give a deed in lieu of foreclosure. The negotiations between the parties led to the acceptance of a deed by the trustee, plus a cash consideration of $8,500. Under the circumstances we see no improvident conduct on the trustee’s part in accepting a deed in lieu of foreclosure. The property sold for $135,000 in 1930 and supported an appraisal of $85,000 in 1935. While a subsequent appraisal obtained by the trustee shortly after acquiring the real estate showed a value of $65,000, it must be borne in mind that the assessed valuation of the property was $102,000 in 1938. These factors would all be evidentiary of value (Heiman v. Bishop, 272 N. Y. 83), and would seem likely to defeat any application for a deficiency judgment in the event of foreclosure. Further, we also think that the trustee as holder of an $80,000 mortgage was justified in not bringing periodic suits for interest and taxes in default under the mortgage. This remedy was unsatisfactory and expensive as a matter of administration as well as uncertain as a matter of law at this particular time. (See 22 Corn. L. Q. 407 [1937], and 25 Corn. L. Q. 401, 405 [1940].) While it is true that lower courts had upheld the right *203 of a mortgagee to sue for such defaults by way of separate actions, the Court of Appeals did not finally determine until 1941 that such suits would lie without prejudice to the creditor’s rights against the security or the principal debt (Bank of New York v. Blumenthal, 285 N. Y. 598). The Baldwin salvage was concluded pursuant to the advice of competent and experienced counsel for the trustee. Accordingly, we consider that the surcharge on this account was improper.
(2) The surcharge of $24,958.16 (computed on $40,000 loss) for making the Vernott lease of the Hotel Albert. This was based on the Surrogate’s finding that such lease was made in gross disregard of the trustee’s fiduciary obligations and for reasons inimical to the interests of the trust. The amount of the surcharge was determined at the rate of $8,000 annually for the term of the lease. The Vernott Corporation was a subsidiary of the Knott chain of hotels. While another holding company of the Knott empire had operated the Albert under a prior lease on which it defaulted and surrendered the property in 1933, the trustee considered that such surrender was fair under the circumstances and presented no impediment to further dealings with the Knott group We agree in view of the conditions then prevailing in the real estate market and the depression impact on the hotel business, of which we may take judicial notice. With regard to conditions in the realty market “ the law is not unmindful of common knowledge ” (Matter of Flint, 240 App. Div. 217, 226). The Knott chain was well and favorably known as a successful operator in the hotel field. The Vernott lease was for a period of five years at a fixed average rental of $32,000 per annum, with provision for a percentage rent during the last three years of the term, plus a deposit of $25,000 cash security for performance of the leasehold covenants. These terms we consider to he reasonable and fair for a short-term lease of the hotel. In fact, the advice of a reputable firm of real estate experts was sought by the trustee, and they reported favorably to the lease. The trustee’s decision as a matter of policy not to lease for a period longer than five years was fully justified in light of the chaotic condition of the real estate market and the hotel business at the time. While the trustee received rival offers for the Albert at greater rentals, such offers were based on long-term propositions and terms not comparable to the Vernott lease. There is testimony, of course, that $40,000 per year would have been a reasonable rental for the hotel, but the significant fact remains that apparently none of the many bidders was ready to pay such sum for a five-year *204 leasehold. At least, there is nothing to indicate that the trustee could have obtained a rental equivalent to that reserved under the Yernott lease on equally satisfactory terms. Under the circumstances the proof does not show that the trustee was guilty of improvidence and breach of trust. It cannot be said that it failed to' display the degree of circumspection and diligence expected of prudent men of discretion and intelligence in matters of this kind. (See Matter of Clark, 257 N. Y. 132; King v. Talbot, 40 N. Y. 76, and Matter of Delamater, 266 App. Div. 200.) Accordingly, we think that the surcharge based on the making of the Yernott lease was unwarranted.
This determination also disposes of the appeal on behalf of those objectants excluded from participation as to this item.
(3) The surcharge of $8,599.21 for “ extraordinary repairs ”. This pertained to certain repairs of a so-called “ extraordinary ” nature made to the Hotel Albert by the trustee after expiration of the Yernott lease. To sustain this surcharge would require some evidence that such expense was occasioned by the tenant’s default under its lease covenant to keep the hotel in reasonable and proper repair. It is enough to say that in this record we find no sufficient and convincing proof of causal relation between the necessity for such repairs and any breach of the lease or default on the tenant’s part.
(4) The surcharge of $945 for fees to hotel accountants. This covered three items of services rendered to the trustee by a firm of auditors preparing reports on the condition and affairs of the Hotel Albert shortly prior and subsequent to termination of the Yernott lease. The trustee was entitled to the assistance and services of accountants expert in the hotel business, and the cost thereof is ordinarily an expense to be borne by the trust estate. The surcharge in respect to this item is not supported by any adequate proof of misconduct on the part of the trustee specially requiring such services otherwise proper and necessary in any event.
(5) The surcharge of $24,690.74 for “ non-enforcement ” of the Yernott lease. This related to the trustee’s sufferance of waste and damage to the Hotel Albert to the extent that cash security of the tenant was available but improperly released by the trustee. We cannot agree with the trustee that it is entitled to be entirely exonerated on account of this surcharge. The surrender of the security deposit was accomplished by the return of $8,190.74 to the tenant in 1938-39 and an additional $16,500 of the security at the end of the lease instead of holding it for the satisfaction or on account of the damage suffered *205 to the hotel property. We find no fault with the release of $8,190.74 to the tenant early in the term. This sum was to meet the tenant’s expenditure- for alterations to the ground floor of the hotel by installation of stores pursuant to agreement with the trustee. The object was an increase in revenue. The cost of such structural changes was not imposed on the tenant under the provisions of the lease. The security deposit was the tenant’s money, and the parties conceived the plan of using a part of it to pay for the cost of a permanent improvement beneficial to landlord and tenant.
The return of the balance of the security upon expiration of the lease presents a different question. It appears that the hotel was in good condition at the time of the leasing to the Knott interests in 1937, and that the tenant was to surrender the property to the trustee at the end of the leasehold in equally good shape. The lease imposed upon the tenant the obligation to keep the property in good condition and repair. However, the report of the trustee’s own firm of accountants and auditors shows that the hotel was in a serious state of deterioration at the end of the lease term and would require considerable rehabilitation, if it was to survive as an hotel. It is quite evident that the condition revealed did not arise overnight, and it would indicate that the trustee might have been derelict in its supervision of the hotel and enforcement of the lease covenant binding the tenant to proper upkeep and repair. It is true that the compromise involving the return of the security-balance in the trustee’s possession at the end of the lease was induced by the attitude of the tenant in refusing to pay installments of rent and taxes during the last few months of the term. These items totaled about $11,000. Their payment, plus some painting that cost $2,000, was secured as part of the compromise. But we think that the trustee permitted itself to be reduced to a situation where it could be induced to compromise as the result of its own dereliction in supervision. Under all the circumstances we hold that there is sufficient evidence to support the finding of the Surrogate that the settlement was improvident whereby a surrender of the security deposit was negotiated with the tenant. Considering the matter realistically, however, we think that the financial loss to the trust estate by reason of this improvident compromise was at most the sum represented by the security in hand and not the cost of subsequent repairs. The tenant was only a holding corporation whose tenancy had not been profitable, and there was no evidence that a judgment against it would be collectible. Accord *206 ingly, we hold that the surcharge imposed for failure of the trustee to enforce the Vernott lease according to its terms should be limited to the balance of the cash security on hand at the expiration of the leasehold term.
III. There remains only the matter of expenses and allowances to counsel and the special guardian in this proceeding. We think that the Surrogate properly directed payment of the allowance to the special guardian from the trust estate. However, in view of the disposition of the surcharges based on the Baldwin mortgage and the Hotel Albert issues, we also think that the surcharge for the expenses of the proceeding should be reduced accordingly as prayed by the trustee.
The decree appealed from should be modified in accordance with this opinion and, as so modified, affirmed, with costs to the appellant Bankers Trust Company payable out of the estate.